MENTZEL, Appellant, vs. MENTZEL, Respondent.

*June 3—June 26, 1958.*

For the appellant there was a brief and oral argument by *Lloyd D. Mitchell* of Oshkosh.

For the respondent there was a brief by *Sigman, Sigman & Shiff* of Appleton, and oral argument by *Samuel Sigman*.

MARTIN, C. J. Both complaint and counterclaim are grounded on cruel and inhuman treatment. Plaintiff alleges misconduct on the part of defendant and improper association with other men. Defendant alleges improper association of the plaintiff with other women, use of abusive, vile, and obscene language toward her, false accusations of improper conduct with other men, and the use of physical violence on her person.

Plaintiff concedes that his conduct constituted grounds for divorce to defendant, but he contends that the wife's conduct likewise constituted grounds for divorce, and under the doctrine of recrimination, neither party is entitled to a divorce.

Plaintiff and defendant were married in 1945 when they were aged eighteen and nineteen years, respectively. Five children were born of the marriage, ranging in age from eleven years to about one year at the time of trial. For approximately six years prior to June, 1956, plaintiff was employed as a molder in a foundry. On August 6, 1955, he purchased a tavern in Oshkosh, which was operated by his mother from that date until June 4, 1956, when he took over its operation.

In July of 1956, about three weeks after the birth of the last child, the defendant wife started working in the tavern, tending bar. She testified her husband insisted that she do so and threatened that he would kick her out if she did not.

All the incidents of alleged misconduct on defendant's part occurred after she began helping the plaintiff in his tavern. At first she worked from 6 p. m. to 1 a. m. and later she regularly worked from about 10:30 in the morning till closing time at 1 a. m. Defendant testified her husband also worked in the tavern on Friday and Saturday nights and occasionally at other times; that when her husband was not there at closing time he expected her to be taken home by another bartender or some customer in the tavern. Defendant admitted being taken home by other men on various occasions, sometimes stopping on the way for something to eat or drink at other taverns or the home of friends.

It is unnecessary to detail the evidence in this respect. A number of plaintiff's witnesses testified they saw the defendant in the company of other men but all of them testified that they observed no improper conduct. Several men with whom plaintiff accused the defendant of misconduct testified they did not have "dates" with the defendant but were merely taking her home and there was no improper conduct between them. There was one witness who testified otherwise, but the trial court discounted his testimony entirely, stating it considered his testimony incredible and false. Plaintiff apparently agrees with this view, since nowhere in his brief does he mention or rely on it.

Plaintiff places considerable reliance on the evidence with respect to an incident which occurred on February 15, 1957, just shortly before this action was commenced. Plaintiff and defendant were both in their tavern. Defendant testified that at 12:45 a. m. she left with a customer, one Tony Wolf, and went to the home of plaintiff's folks for some drinks.

On their return they found the plaintiff had left the tavern and Wolf offered to take the defendant home. On the way he decided they should have something to eat and they proceeded to a place on the outskirts of town. There Wolf helped someone change a tire and shortly thereafter, on their way home the car skidded off the road. They waited in the car for about an hour and a half until a squad car arrived at 5:45 a. m. The officers testified that the clothing of Wolf and the defendant was in a disarranged condition. Wolf was arrested for driving without a license. Both he and the defendant were taken to the courthouse; defendant was not arrested. Defendant tried to call her husband but he was not at home. She stayed at the courthouse until 10 o'clock in the morning, until the case against Wolf was disposed of. Then she went home by cab. She testified that a violent quarrel took place between her and the plaintiff.

When the testimony was concluded the trial court made a statement from the bench which included the following remarks:

"So we have accusations and counteraccusations, and were this court to decide this case according to the supreme court's decision, it would have to throw the case out of the window, because any action for divorce must be an action in equity; both parties must come into this court with clean hands. There is much, much uncleanness on the part of both parties.

"The allegation as to the treatment, cruel and inhuman treatment, on the part of the plaintiff towards the defendant have been proven and I believe are grounds for divorce.

"The court is, for the purpose of the record, discounting any of the accusations as far as infidelity on the part of the plaintiff or the defendant. They are both equally guilty. . . . Were it not for the fact that the court is convinced that for the time being these people cannot become reconciled, the court would dismiss this action. It is, however, apparent that such is not the case.

"The court therefore awards the divorce to the defendant on her counterclaim. I do so only for the reason that there is less stigma attached to it. She is no more worthy of the divorce than is the plaintiff, but because of the stigma which attaches if it were given to the husband, the court is granting her the divorce on her counterclaim."

These oral comments are the basis of plaintiff's argument that the trial court recognized the law but did not apply it. The doctrine of recrimination is applied where the evidence shows each party has been guilty of an offense which constitutes grounds for a divorce in favor of the other. See *Bahr v. Bahr* (1956), 272 Wis. 323, 75 N. W. (2d) 301, and authorities therein cited.

After the statement from the bench, however, the trial court considered three motions of the plaintiff, the first of which was that the divorce judgment awarded to the defendant should be vacated and set aside as being contrary to law and that judgment of divorce be awarded the plaintiff. In a written decision, the trial court stated:

"In addition to the fact that this physical abuse on the part of the plaintiff was not justifiable, the plaintiff has not established sufficient grounds for a divorce."

Plaintiff also moved that the judgment be set aside as not justified in the law and under the facts as found by the court and that the action be dismissed. On this motion the trial court stated in its written decision:

"The motion of the plaintiff to dismiss the action is based upon a recent decision by the supreme court in the case of *Bahr v. Bahr*, 272 Wis. page 323. . . . This court is well aware of that case. However, the allegations as to misconduct on the part of both parties were proven as a matter of record. In the instant case the allegations as to the misconduct on the part of the defendant were not proven as set forth in the complaint. It was established, however, that the wife did conduct herself in a manner which was not approved by this court. At the time of the trial of this case the court

repeatedly challenged the remark on the part of the attorney for the defendant that she did nothing wrong or improper. This court many times stated that, in its opinion, such conduct was improper. The fact remains, however, that there was no competent evidence of any moral misconduct from the standpoint of sexual conduct on the part of the defendant. . . . The fact that the defendant did go out with these men after working hours cannot be deemed to be proper and she should be censured by any court hearing the evidence, and the court did so censure both parties. Aside from this point, the basis for the decree awarding the judgment of divorce to the defendant was distinct and separate from the accusations and counteraccusations as to the misconduct with other parties on the part of both the plaintiff and the defendant."

Thus, in its written decision the trial court makes it clear that the oral remarks above referred to were made solely for the purpose of censuring the defendant for conduct of which it did not approve. It is made equally clear that the trial court considered her conduct, reprehensible though it was, not such as would constitute grounds for granting a divorce to the plaintiff. Hence the doctrine of recrimination does not apply.

This view of the trial court must be upheld. The evidence of defendant's association with other men gave rise to no more than a suspicion of immoral conduct and did not compel the court to find that it constituted an offense which would entitle the plaintiff to a divorce. Moreover, plaintiff admitted that when he put his wife to work in the tavern he knew she would be exposed to all the customers and he expected her to drink with them. Defendant testified that plaintiff usually left her to close the tavern at 1 a. m. and find her own way home, even suggesting that other men give her a ride. Thus, her association with other men grew out of circumstances into which plaintiff placed her.

In any event, plaintiff offered no evidence that the conduct of his wife caused him great mental suffering and rendered

impairment of his health probable. This is an essential element of cruel and inhuman treatment.

" 'In order to constitute cruel and inhuman treatment the conduct of the guilty party must at least be such as to naturally cause great mental suffering to the other and render impairment of health probable, so that further efforts to perform the duties of the marriage state would be dangerous.' (Citing *Hiecke v. Hiecke,* 163 Wis. 171, 157 N. W. 747.)" *Moen v. Moen* (1946), 249 Wis. 169, 171, 23 N. W. (2d) 472.

Plaintiff's second contention is that it was error for the trial court to award the defendant approximately 50 per cent of the property of the parties in its final division, arguing that there are no special circumstances in this case which would justify a division to her in excess of one third of the estate.

The trial court found the estate to have a net value of $30,400. The judgment gives to the wife the homestead worth $15,000, subject to a $2,000 mortgage. There are two upstairs apartments capable of producing $105 per month income. Defendant was also awarded the temporary custody of the five minor children and $35 per week for their support. No alimony was awarded.

As has often been said, the division of property in divorce cases is a matter peculiarly within the discretion of the trial court and depends upon the circumstances of the particular case. *Hoffman v. Hoffman* (1955), 270 Wis. 357, 71 N. W. (2d) 401. The trial court pointed out in its decision that the care of the children, ranging in age from eleven years to less than one year, will make it impossible for the defendant to take employment so as to contribute anything to her own support, and she will receive no alimony. It can hardly be expected that the income from the upstairs apartments will cover much more than the taxes, the mortgage, and other expenses of maintaining the property as a home for

the defendant and the children. These are special circumstances justifying a greater division than one third of the estate to the wife. As stated in *Burg v. Burg* (1957), 1 Wis. (2d) 419, 422, 85 N. W. (2d) 356:

"We consider the allowance to the wife in this case as being to a large extent for the benefit of the children. Considering the welfare of the children, no fair and reasonable alternative to awarding respondent the homestead property was presented to the trial court; appellant suggested none either at the trial or on this appeal. In fact, it appears to us that had the trial court simply divided the property according to some theoretically equitable one-third or one-half formula, such a determination would undoubtedly have resulted in greater burdens to the appellant in the future than those of which he now complains."

The trial court also pointed out that if it had awarded what it considered a fair alimony allowance, the plaintiff would eventually have paid more than twice the value of the property given the defendant in the final division. Under all the circumstances we consider the trial court exercised its discretion fairly and with due regard to the rights of both parties.

*By the Court.*—Judgment and order affirmed.