LACEY, Respondent, v. LACEY, Appellant.

*No. 20. Argued December 1, 1969.—Decided January 9, 1970.*
(Also reported in 173 N. W. 2d 142.)

For the appellant there were briefs and oral argument by *John G. Barsness* of Madison.

For the respondent there was a brief and oral argument by *David C. Pappas* of Madison.

ROBERT W. HANSEN, J. In objecting to the division of property in this divorce case, the husband cites the 1914 case in which this court suggested: ". . . a clear third of the whole is a liberal allowance to the wife, . . ." [1]

This statement has been repeated so often in subsequent decisions that one well-respected law text concludes that Wisconsin, alone among all states, has adopted one third of the marital estate to the wife as the standard to start from, to be increased or decreased only by special circumstances. [2]

---

[1] Citing *Gauger v. Gauger* (1914), 157 Wis. 630, 147 N. W. 1075.

[2] 24 Am. Jur. 2d, *Divorce and Separation,* p. 1065, sec. 933: ". . . On the other hand it has been held in one jurisdiction that the general level to start from in denuding the husband of his property is one third, subject to be increased or decreased according to the special circumstances." (Two Wisconsin decisions cited.)

However, the varying percentages for distribution reached or upheld in these same subsequent decisions vary so often and so greatly that another well-respected law text lists Wisconsin with what appears to be a majority of other states in having no formula or standard, with the facts and circumstances of the individual case to determine the proper ratio or percentage for apportionment of assets in divorce actions.[3]

When leading text authorities disagree as to whether the formula to be used derives from the facts in a given case, or whether special circumstances merely justify deviation from a general standard, the time has come to clarify the situation. That endeavor best begins with setting forth in full the statement, now fifty-five years old, in which the dower-type allowance to the wife was termed "liberal." The statement then made reads:

"The nearest approach thereto is this: Except in some extraordinary circumstances, the maximum for the wife is one half. That may be reduced to one third or even less. . . . The general level to start from is one third. Since the early suggestive guide in respect to the matter, it has been pretty well established that a clear third of the whole is a liberal allowance to the wife, subject to be increased or decreased according to special circumstances. . . ."[4]

Read as an entirety, it is clear that one third to the wife was not laid down as either a maximum or a minimum. Phrases such as "extraordinary circumstances" and "subject to be increased or decreased" are not to be disregarded in analyzing what was said. The reference

[3] 27B C. J. S., *Divorce*, p. 285, sec. 295 (1): "The division of property or adjustment of property rights upon a divorce generally depends on the facts and circumstances of the particular case (citing eighteen states, including Wisconsin) and rests largely in the discretion of the court (citing twenty-three states, including Wisconsin). . ."

[4] *Gauger v. Gauger, supra,* at p. 633.

to one half or more to the wife in some situations as well as the reference to one third or less to the wife in other situations are both parts of the same "suggestive guide." We do not read the quote as establishing an exact formula or mandatory measuring stick for property division in divorce cases. We find in the full quotation a clear recognition that the formula to be followed in a particular case depends upon and derives from the material facts and factors present in such case. To extract the reference to either "one half" or "one third" as possible ratios is at least to shift emphasis and perhaps to distort meaning. The inbuilt flexibility of the 1914 suggestion is lost if a phrase or sentence therefrom is substituted for the full statement.

Even in its entirety, the 1914 fountainhead decision seems to us now to stress the starting point too much, the finishing point too little. It is the equitableness of the result reached that must stand the test of fairness on review. The process is not analogous to a racetrack with a fixed starting line and prescribed finishing place. The only analogy that fits is balancing the scales. All factors favorable to either party must be placed on the scales, and the scales must then balance. The responsibility of the trial court is to fairly, equitably and justly divide the marital property between the spouses, and where it begins is not crucial. It is where it ends that is to be reviewed on appeal.

The division of the property of the divorced parties rests upon the concept of marriage as a shared enterprise or joint undertaking. It is literally a partnership, although a partnership in which contributions and equities of the partners may and do differ from individual case to individual case. In a brief marriage, particularly as to property which the husband brought to the marriage, one third to the wife may be too liberal an allowance. In a long marriage, particularly as to property acquired by the parties during the marriage, a fifty-fifty division may well represent the mutuality of the

enterprise. In determining the proportion of contribution by husband and by wife in the acquisition of property, more than economic factors are involved. We do not deal with two people with no more in common than two strangers or business associates. The contribution of a full-time homemaker-housewife to the marriage may well be greater or at least as great as those of the wife required by circumstances or electing by preference to seek and secure outside employment. The formula for division derives from the facts of the individual case. If it is argued that this approach gives great leeway and also places a heavy responsibility on trial courts in divorce cases, there is no gainsaying that fact. However, both flexibility and responsibility are called for by the endless variety of human situations that come to court in family cases. No two are exactly alike.

It is not necessary here, and perhaps not possible, to attempt an encyclopedic listing of all possible factors that can be considered by a trial court in determining the formula for dividing the property of the spouses in divorce or separation actions. Whatever is material and relevant in establishing a fair and equitable basis for division of the property of the parties may be considered. Such relevant factors certainly include the length of the marriage,[5] the age and health of the parties,[6] their ability to support themselves,[7] liability for debts or support of children,[8] general circumstances, including griev-

[5] *Kronforst v. Kronforst* (1963), 21 Wis. 2d 54, 61, 123 N. W. 2d 528; *Schmidt v. Schmidt* (1968), 40 Wis. 2d 649, 655, 162 N. W. 2d 618.

[6] *Yasulis v. Yasulis* (1959), 6 Wis. 2d 249, 253, 94 N. W. 2d 649; *Antholt v. Antholt* (1959), 6 Wis. 2d 586, 588, 95 N. W. 2d 224; *Trowbridge v. Trowbridge* (1962), 16 Wis. 2d 176, 182, 114 N. W. 2d 129.

[7] *Strandberg v. Strandberg* (1967), 33 Wis. 2d 204, 210, 147 N. W. 2d 349; *Spheeris v. Spheeris* (1967), 37 Wis. 2d 497, 510, 155 N. W. 2d 130.

[8] *Burg v. Burg* (1957), 1 Wis. 2d 419, 422, 85 N. W. 2d 356; *Mentzel v. Mentzel* (1958), 4 Wis. 2d 584, 590, 91 N. W. 2d 101.

ous misconduct, although a division is not a penalty imposed for fault.[9] Whether the property award is in lieu of or in addition to alimony payments is a material factor.[10] Whether the property was acquired during the marriage or brought to the marriage makes a difference.[11] Since the Wisconsin statute provides that separate property of the wife, possessed by her before the marriage or acquired solely by her efforts, is to be awarded to her,[12] the amount of such separate estate is a proper factor to consider in determining how much of the husband's or marital property is also to be awarded to her. Additionally, in Wisconsin, where a trial judge is required to take affirmative steps to determine and protect the rights of minor children involved,[13] sequestering a portion of present assets to provide for future needs of minor children may be a prudent precaution and proper provision in a property division determination.[14]

The application of the general concept and consideration of the specific factors involved in determining the fairness of the property division ordered in the case before us is no easy matter. In fact, it cannot be done because of gaps in both the trial court decision and its findings of facts. It is true that the sequence of events set forth in the record does give a general picture of the property holdings involved, and the manner of their ac-

[9] *Yasulis v. Yasulis, supra,* at page 253; *Knutson v. Knutson* (1961), 15 Wis. 2d 115, 121, 111 N. W. 2d 905; *Schmidt v. Schmidt, supra,* at page 655.

[10] *Zajdel v. Zajdel* (1961), 15 Wis. 2d 31, 37, 111 N. W. 2d 896; *Radandt v. Radandt* (1966), 30 Wis. 2d 108, 113, 140 N. W. 2d 293.

[11] *Wingad v. Wingad* (1957), 2 Wis. 2d 393, 396, 397, 86 N. W. 2d 425; *Johnson v. Johnson* (1969), 42 Wis. 2d 237, 243, 166 N. W. 2d 230.

[12] Sec. 247.26, Stats.

[13] *Kritzik v. Kritzik* (1963), 21 Wis. 2d 442, 124 N. W. 2d 581.

[14] *Johnson v. Johnson, supra,* at page 243.

quisition, but it gives no more than that. The record does indicate that:

*In 1957*, the wife and her then husband entered into a land contract for the purchase of a home and adjoining lot and one half in Stoughton, Wisconsin. The wife borrowed $3,000 from her father for the down payment.

*In 1959*, when that marriage ended in divorce, the wife was awarded the home and adjoining real estate as her sole property. The wife considered offers to purchase and plans to develop the real estate, the only undeveloped lot in downtown Stoughton.

*In 1961*, following the marriage of the parties, the husband claims to have expended $5,000 worth of work in fixing windows, adding a furnace, and generally keeping the home in good repair, which claim the trial court found to be not established.

*In 1963*, earlier plans of the wife for development of the lot and one half materialized. An apartment building with four units was erected. A construction loan for $41,000 was obtained and financed by an $11,000 mortgage on the home owned by the wife. A mortgage was also obtained on the apartment building and the lot in the amount of $35,000. Payments on the home mortgage are $122 per month, on the apartment mortgage, $333 per month. Rental income was $125 for each of the four units.

*In 1965*, the wife and husband acquired a house in Stoughton as income property. A $1,000 down payment was made on a purchase price of $7,500. Mortgage payments are $75 per month; the property rents for $85 per month.

Additionally, the record discloses that we have here a marriage of nine years' duration, and that the parties have one child. On this record, the trial court awarded the equity in the apartment house to the wife, and the equity in the income property to the husband. There is a dispute as to valuation of the two assets—apartment

house and income property, even between the experts of one party.

However, the trial court in neither the findings nor written decision made any determination of the value of the two equities involved. Where a percentage interest in a single piece of property is awarded, this might be comparatively unimportant. But where one piece of property is awarded to the wife and the other to the husband, without an exact finding as to the value of each item, the impossibility of a reviewing court determining exactly what each received in dollar values should be apparent. Particularly since there was a dispute as to the value of the properties in the testimony of expert witnesses at the trial, a finding as to the values of the two properties involved should have been made and included in the decision or in the findings or, preferably, in both.

Additionally, neither the findings nor the written decision of the court indicate any of the factors considered and found material by the trial court in making the apportionment of the assets between the parties. If on review the equitableness of a division of property is to depend upon the material facts and factors present in the case, it follows that a firm foundation for such division must be laid by including in findings or decision the factors found relevant and considered by the judge in reaching his decision as to property division. Even if we were to revert to the starting point concept of one third or one half as a beginning, the special circumstances relied upon for ending up far from the starting point would have to be detailed to explain the variance. If the findings of fact or the written decision do not indicate the basis on which the property was divided, and the reasons for so doing, review of the fairness of the result reached become not just difficult, it becomes impossible.

In three recent decisions this court has emphasized the importance of complete findings of fact in family

court cases.[15]   The reversal and remand here should
underscore the necessity for a decision and findings of
fact in family court cases that are complete and com-
prehensive.   The obvious enough footnote is added by
this case that a reviewing court cannot determine the
reasonableness of a property division in a divorce case
when none of the factors that led the trial judge to make
such apportionment are set forth in the decision or the
findings.   The reasonableness of the entire property
division order rests upon the facts and factors considered
by the court.   They are its foundation.   If the factors
relied upon are not set forth in the findings or decision,
there is no way on review of determining whether the
foundation supports the superstructure.

So the judgment here must be reversed, but only in-
sofar as it relates to the division of the property of the
parties between them.   The case is remanded with direc-
tions that the findings of fact be amended to include:

1. *Valuation.*   A finding by the court of the value of
the apartment house and the value of the income prop-
erty.

2. *Separateness.*   A finding by the court as to whether
the apartment house was found to be marital property of
the parties, having been acquired during the marriage,
or to any extent considered to be the sole or separate
property of the wife, as having been built upon her prop-
erty.

3. *Material Factors.*   A setting forth of all facts and
factors which the trial court considered relevant, and in
fact considered in reaching its decision as to the division
of the property of the parties between them.

4. *Modification.*   Since the portion of the judgment
relating to property division is reversed, the remand in-
cludes the right of the trial court to take additional testi-

[15] *Walber v. Walber* (1968), 40 Wis. 2d 313, 319, 161 N. W. 2d
898; *Jacobs v. Jacobs* (1969), 42 Wis. 2d 507, 512, 167 N. W. 2d
238; *Heup v. Heup,* ante p. 71, 172 N. W. 2d 334.

mony, if it so elects, on this issue only, and to modify in any way the portion of the judgment relating to the division of the property of the parties between them. We do not hold that the trial court must reach a different conclusion as to the ultimate division of property in this case, but only that the factors and reasons which underline the division be clearly spelled out.

Finally, on this appeal, the husband contends that the wife should have been required to pay one half of the fees of the guardian *ad litem* appointed to represent the interests of the child of the parties in the matter of custody. Properly and prudently, the court appointed such guardian *ad litem* for the child when the husband challenged a pendente lite order awarding temporary child custody to the wife. An investigation of the alternatives as to custody placement was ordered by the court. The investigator reported both wife and husband to be fit persons to have custody. Subsequently, the husband dropped his claim of right to custody. The court ordered the guardian *ad litem* fee paid by the husband.

The Wisconsin Family Code has recognized the impact of divorce and dissolution of marriages upon the minor children of the parties.[16] This court has held that under the code children ". . . are not to be buffeted around as mere chattels in a divorce controversy, but rather are to be treated as interested and affected parties . . . ."[17] In recent cases, this court has stressed the importance of appointing guardians *ad litem* to represent the children in divorce actions in certain situations,[18] as part of the ". . . affirmative duty" of the court to protect the rights of such children.[19] None of these decisions

[16] Sec. 245.001, Stats.

[17] *Wendland v. Wendland* (1965), 29 Wis. 2d 145, 157, 138 N. W. 2d 185.

[18] *See Edwards v. Edwards* (1955), 270 Wis. 48, 56b, 70 N. W. 2d 22, 71 N. W. 2d 366; *Wendland v. Wendland, supra,* fn. 17; *Koslowsky v. Koslowsky* (1969), 41 Wis. 2d 275, 283, 163 N. W. 2d 632; *Dees v. Dees* (1969), 41 Wis. 2d 435, 444, 164 N. W. 2d 282; *Johnson v. Johnson, supra,* at page 245.

[19] *Kritzik v. Kritzik, supra,* at page 442.

have addressed themselves to the questions of when one or when both of the parents should be expected to pay the costs involved in providing such legal representation for their minor children. Where both spouses have ability to pay, it would seem that both should be required to contribute to the cost of having a guardian *ad litem,* with the percentage to be paid by each parent to be left to the discretion of the trial court. While ordinarily the question of who is to pay (and in what percentage) would be left to the discretion of the trial court, since this is a question of first impression on this issue and since both of the parties here have the clear ability to pay all or any portion of the modest guardian's fee, we reverse the portion of the judgment requiring the husband to pay the entire fee of the guardian *ad litem* for the child and direct that such portion of the judgment provide that 50 percent of the fee of the guardian *ad litem* be paid by the husband and 50 percent by the wife.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion.