586 P.2d 1370

**Robert J. KOESTER, Plaintiff-Respondent Cross-Appellant,**

**v.**

**Cleo M. KOESTER, Defendant-Appellant Cross-Respondent.**

**No. 12410.**

Supreme Court of Idaho.

Nov. 27, 1978.

Terry C. Copple of Davison, Copple & Copple, Boise, for defendant-appellant and cross-respondent.

Byron J. Johnson, Boise, for plaintiff-respondent and cross-appellant.

McFADDEN, Justice.

This appeal is from a divorce decree also involving a division of marital assets, custody, support and visitation rights of the parties. Both parties appeal from a judgment of the district court which modified in part a divorce decree by the magistrate's division.

Robert and Cleo Koester, respondent and appellant respectively, were married in 1963 and two children were born of that marriage. On April 4, 1974, the parties separated and drafted an agreement temporarily dividing marital assets and giving custody of the children to respondent. After the parties separated, appellant moved from Wisconsin to Nebraska.[1] When attempts at reconciliation failed, respondent, who had secured a teaching position in Idaho, moved from Wisconsin to Idaho and prior to entry of the Nebraska decree in the separate maintenance action initiated the present divorce action in the magistrate's division of the Fourth Judicial District Court.

The magistrate granted the parties[2] a divorce and gave custody of the children to respondent, finding that the children's best interest dictated that respondent retain cus-

1. While in Nebraska appellant instituted an action for separate maintenance, custody of the children, alimony and child support from her husband. This action culminated in an order whereby respondent was granted temporary custody, subject to visitation rights of appellant. Respondent was authorized to maintain the children at Boise, Idaho, and the cause was set for further custody proceedings in July, 1975, unless some other court having jurisdiction of the parties and subject matter determined the issue of custody. The decree also awarded appellant $250 per month alimony.

2. The magistrates court had before it the decree in the Nebraska action at the time of trial of the Idaho divorce action.

tody of the children. The case was reopened to admit evidence concerning appellant's earning capacity and her recent move from Nebraska to Idaho that enabled her to exercise maximum visitation rights. In a separate memorandum opinion the magistrate established visitation rights, granting appellant visitation rights on alternate weekends, holidays, and for a thirty day period during school summer vacation. In a later memorandum opinion the magistrate determined the parties' claims for costs, attorney fees, alimony, property settlement rights and child support payments. Costs, attorney fees and appellant's request for alimony were denied. The magistrate found that the April 4, 1974, property settlement agreement was not binding, but the parties' division of marital assets and liabilities would approximate a fair allocation if appellant were awarded a $1500 reimbursement. Concerning the claims for child support, the magistrate found:

> It is clear that [appellant] has the financial ability to *contribute* to the support of the children. It is also clear that [respondent] has the ability to *support* the children without a contribution from [appellant]. While it is not a direct equivalency, relieving [appellant] from the child support obligation will at least in part compensate [appellant] for the contribution she made toward [respondent's] education. Therefore, [respondent's] claim for support is denied . . . . Should the needs of the children dictate this provision is subject to further court order. (Emphasis added.)

Appellant appealed the magistrate's determination to the district court. Respondent did not, however, contest the magistrate's determination. On appeal, the district court heard the case based on the appellate record from the magistrate's division and took the matter under advisement. Prior to a determination on the merits and while the case was under advisement, appellant moved to supplement the appellate record to reflect a material change of circumstances that had occurred since the appeal. The district court granted the motion to supplement the appellate record and the parties stipulated that the change in cir-

cumstances could be considered by the district court on affidavits.

■ In her affidavit before the district court, appellant stated that respondent and the children had moved to Texas after the case had been taken under advisement on appeal to the district court. Appellant alleged that respondent's actions were an attempt to thwart her rights of reasonable visitation and that appellant was financially unable to move to Texas in order to visit the children. Appellant therefore requested that the district court either modify the award of custody or change her visitation rights. Respondent stated in his affidavit that he had moved to Texas to accept a more responsible teaching position of enhanced professional standing and that the move had not been made to deprive appellant of visitation privileges. Respondent court's scope of review changed from an appellate review under I.R.C.P. 83(u)(1) to a trial *de novo* under I.R.C.P. 83(u)(2). Although the resolution of this issue is not explicitly stated in I.R.C.P. 83(u)(2), and is therefore a matter of first impression, we hold that where the district court chooses to handle an appeal as an appellate review and then elects to hear additional evidence on one or more issues, those issues affected by the additional evidence shall be treated as if involving a trial *de novo*. In other words, to the extent that the new evidence affects the decision of the magistrate, the district court shall act as a trial court. Where the additional evidence admitted by the district court does not affect the determination of the magistrate, the district court shall act as an appellate court.

■ On further appeal to this court from the determination of the district court where additional evidence is presented pursuant to I.R.C.P. 83(u)(2), the new matters affecting the magistrates determination will be scrutinized by this court according to the same standard of review as other appeals from the district court. However, where the district court's review of the magistrate's determination is not affected by the new matters presented to the district court, our review of the district court will

be as though the district court was an intermediate appellate court.

■ Appellant assigns error to awarding custody of the children to respondent, challenging this determination of the magistrate's court as well as that of the district court. She claims that both courts abused their discretion in denying her continuous custody of the children. In custody disputes, the awarding of custody of minor children rests within the sound discretion of the trial court and will not be upset on appeal absent an abuse of discretion. *McNett v. McNett*, 95 Idaho 59, 501 P.2d 1059 (1972); *Saviers v. Saviers*, 92 Idaho 117, 438 P.2d 268 (1968); *Bryant v. Bryant*, 92 Idaho 76, 437 P.2d 29 (1968). An abuse of discretion occurs when the evidence is insufficient to support a finding that the welfare and interests of the children will be best served by changing custody of the children. *Tomlinson v. Tomlinson*, 93 Idaho 42, 454 P.2d 756 (1969); *Larkin v. Larkin*, 85 Idaho 610, 382 P.2d 784 (1963). In the instant case the magistrate's court found that it would be detrimental to the welfare and best interests of the children to remove them from established patterns and relationships which they have been accustomed to in Idaho. Further, it found that, after comparing how each party would serve the welfare and best interests of the children, the evidence established that the children's best interest and welfare would be served by having custody remain with respondent father, at the time of the magistrate court's decree. While there is conflicting evidence, it is the conclusion of this court that those findings by the magistrate's court are fully sustained by the record. On appeal to the district court, that court made the same determination, stating "[t]he award of custody to the plaintiff father [respondent] was based on substantial evidence and the evidence does in fact support the findings made . . . [by the court] below." We find no abuse of discretion and no error on the part of the district court in affirming the award of custody of the children to respondent by the magistrate's court, as of the time of the magistrate court's decree.

■ While appellant claims the court erred in awarding custody of the children to the respondent, respondent cross-appeals claiming the district court erred in awarding appellant custody of the children for the three summer months, and in granting to her visitation rights during the Christmas vacation. However, the district court found a material and permanent change of circumstances resulting from respondent's departure to Texas, which took place the summer following entry of the decree and while the case was on appeal to the district court. The district court found that both parents were fit and proper persons to have custody of the children and that the distances involved made visitation with the children difficult for appellant. Based on this substantial change of circumstances appellant was awarded custody during the school summer vacation months to enable the children to spend more time with their natural mother. It is the conclusion of this court, based on this change of circumstances occurring since entry of the magistrate's decree of custody, that the district court did not abuse its discretion in awarding respondent custody of the children, subject to appellant's rights of custody during the summer. The modification of custody reflects a careful determination that the children's best interests require that they spend time with their mother. While divided custody of children is not encouraged in this state, *Merrill v. Merrill*, 83 Idaho 306, 362 P.2d 887 (1961), an award of divided custody is not an abuse of discretion where justifying circumstances appear. *Wilson v. Wilson*, 77 Idaho 325, 291 P.2d 1113 (1955). In *Nielsen v. Nielsen*, 87 Idaho 578, 394 P.2d 625 (1964), this court noted:

It is not unusual for the courts of Idaho to grant one parent the right to have child custody for one or two months during the year while the other parent is given custody for the remaining months of the year, *Larkin v. Larkin*, 85 Idaho 610, 382 P.2d 784; *Merrill v. Merrill*, 83 Idaho 306, 362 P.2d 887; *Smith v. Smith*, 67 Idaho 349, 180 P.2d 853; *Tobler v. Tobler*, 78 Idaho 218, 299 P.2d 490, where the welfare and best interest of the child require this.

*Id.* at 582, 394 P.2d at 626–27. Because of the distances involved and appellant's inability to effectively exercise visitation rights, division of custody instead of merely granting increased visitation rights was a practical solution. No error was committed by the district court in dividing custody in this case. Accordingly, the judgment of the district court modifying custody is affirmed.

Based on the material, permanent and substantial change of circumstances, the district court also properly determined respondent's child support obligation during the time of appellant's custody of the children. The magistrate did not address this issue because continuous custody was originally awarded to respondent. Based on the additional evidence before the district court requiring modification of custody, the district court was required to determine respondent's child support obligation, changed visitation rights and allocation of travel expenses incurred in exercising visitation and custodial rights. Although the magistrate found that appellant could contribute toward the children's support, the magistrate found that only respondent was able to support the children without contribution from the other parent. Child support requirements during appellant's custody of the children was therefore properly an issue presented to the district court by the additional evidence showing a change of circumstances occurring after the magistrate's determination. Similarly, the distances involved and the added costs to be incurred in exercising visitation rights required that the district court address and resolve these issues. Considering the record of the magistrate's division as supplemented by the additional evidence introduced before the district court, the district court did not err or abuse its discretion in awarding appellant child support payments during the period of her custody of the children, defining the parties visitation rights and transportation responsibilities.

Appellant also maintains that the magistrate made an unjust division of marital assets and liabilities and should have awarded her alimony payments. This court initially notes that the assets involved, having been acquired in either Wisconsin or Nebraska while the parties were still married, are not community property assets. Nevertheless, under the laws of either state the court is directed to equitably divide marital assets, whether real or personal, as is just and equitable.[3]

The magistrate adjusted the parties' division of marital assets and liabilities and awarded appellant an additional $1,500 reimbursement. The magistrate denied appellant's claim for alimony, finding that no further allowance was necessary. These determinations were affirmed by the district court. Appellant has failed to show an abuse of discretion, in the absence of which the decision of the magistrate as affirmed by the district court must be and is affirmed. It should be pointed out that if the children's future needs dictate, the appellant may still be required to furnish support. Support payments are the rights of the children, not of the parents.

Respondent assigns error to the district court's award of $750 to appellant as a portion of her attorney fees occasioned by this litigation. This was in effect a reversal of the magistrate's determination that appellant should not receive any attorney fees. The award of attorney fees is discretionary. I.C. § 32–704. *Heidemann v. Heidemann,* 96 Idaho 602, 533 P.2d 96 (1974); *Adams v. Adams,* 93 Idaho 113, 456 P.2d 757 (1969). In the hearing before the magistrate, appellant testified that she was $2,000 in debt, that she had come to Idaho to attend the hearing, that she was unemployed and was seeking employment. The district court found in effect that the magistrate had abused his discretion in not awarding something as attorney fees. In its memorandum opinion the district court stated

The fact that defendant mother had to change her place of residence from Nebraska to Idaho to participate in this liti-

---

3. *See* Wis.Stat. § 247.26; Neb.Rev.Stat. § 42–365; *Bliven v. Bliven,* 190 Neb. 492, 209 N.W.2d 168 (1973); *Lacey v. Lacey,* 45 Wis.2d 378, 173 N.W.2d 142 (1970).

gation and the difference in the relative income of the plaintiff and defendant leads me to the conclusion plaintiff ought to pay at least a portion of defendant's attorney fees occasioned by this litigation.

It is the conclusion of this court that the district court did not err in modifying the judgment of the magistrate's court insofar as the award of attorney fees is concerned.

Affirmed; no costs allowed.

DONALDSON and BAKES, JJ., concur.

SHEPARD, Chief Justice, concurring in part and dissenting in part.

I concur in much of the majority opinion, but as to two portions thereof, I must dissent. After the abortive proceeding in Nebraska, the present action was instituted in the courts of Idaho. After an extensive hearing thereon in which both appellant and respondent were present personally and testified extensively, that court also determined that the best interest of the children required that their custody be placed in respondent father. The reasons for the decisions of those courts are, in my judgment, amply supported by the evidence in the case. Whether it be found in the appellant mother's past psychiatric problems, the fact that she left the family and her children for an extended period of time with no attempt to contact them for some months thereafter, whether it be that she refused to return the children following a visitation period, whether it be that she twice unsuccessfully attempted to kidnap the children and remove them from the State of Idaho, whether it be what could be described as her questionable attitude toward the children; all these factors are somewhat beside the point, except that they sustain, in my judgment, the custodial decision of the magistrate court.

It should be noted that the magistrate was concerned as to the visitation privileges of the noncustodial parent since, at the initial hearing of the matter, the appellant mother had not then moved to Boise. The magistrate court noted, "each party has engaged in abuse of tactics to secure possession of the children." He also noted, "considering distances involved and expense involved and it's not something that can be resolved in the usual fashion that it might, alternate weekends or the like." Thereafter, the appellant mother did in fact move to Boise and hence the problems of distance and expense of travel did not arise. However, the magistrate court, in my judgment, clearly recognized the possible existence of future problems and clearly stated, "should either party move from the Boise area the terms of *visitation* shall be reviewed by the court *for appropriate modification.*"

Thereafter, on appeal to the district court, a change of *custody* was entered. This albeit the district court affirmed the magistrate decision insofar as it found that the best interest of the children required that the custody of the children be placed in the respondent father. Likewise, on appeal to this Court, the majority opinion affirms the finding that the best interest of the children requires their custody be placed with the respondent father. Thus, notwithstanding the finding of the magistrate as to the best interest of the children, the custody during the summer months has been placed with appellant mother. If such action had been taken by the magistrate court, I would affirm. In the instant case, however, I feel that the district court, solely on a cold record amplified by affidavits, was in no better position to make that *finding of fact* than would this Court. In my judgment, that decision should be made by the trier of fact, who, in the instant case, was the magistrate. I would reverse the decision of the district court in this regard and remand the matter for further proceedings in the magistrate court in accordance with the final decree of the magistrate wherein he indicated an intent to entertain a petition for modification as to visitation rights in the event that either of the parties left the Boise area.

Also, I must dissent as to the majority's affirmance of the district court decision relating to child support payments to the mother during summer visitation-custody period when the children are with their mother. My reading of the record would indicate that the respondent father had a

net take home pay of approximately $850 per month during the time that he was employed in Boise. I find no indication in the record as to what his net take home pay became when he accepted a new position in Texas, other than it was somewhat higher. The record is not clear as to the appellant's financial situation, other than she was a registered nurse, was capable of and held positions paying, in 1975, approximately $5.00 per hour, plus National Guard pay for weekend duty. She had responsibility to support only herself. As noted by the majority, it is not contested but that she had the ability to contribute to the support of the children during the time that they were in the custody of their father, however, her duty of support was forgiven. Rather clearly, in the instant case what is sauce for the goose is, a horse of a different color since, during the time that the children are with their mother, the father is required to provide support. If such be equity, it is of a type both new and novel. This is perhaps best demonstrated by a converse hypothetical. If a mother having the custody of two young children was raising, housing, feeding and clothing the children with no financial help from the father who was shown to have the ability to contribute, and the father sought and gained extended visitation-custody during the summer months and sought child support from the mother during that period of time, we would undoubtedly laugh him out of court. I fail to see why a different rule should be applied at the case at bar merely because the sexual roles are here reversed.

BISTLINE, Justice, concurring and dissenting.

I concur in the holding that the district judge properly modified the child custody provisions so as to award the mother custody of the children during the summer. The district judge also properly made provision that the father help support the children during that time.

I am unable to agree with the Court's approval of a child support disposition which is related to the award of marital assets. Child support payments are for the benefit of the children, not the parents. I dissent from the Court's approval of a lower court determination which allotted the wife the pittance of $1,500 as her share in the husband's education, doing so not on the basis of the value of that asset, but rather on the basis that she would not be required to help support the children, but yet leaving open the possibility that she might yet be required to pay child support. It is an unjust bargain. Worse yet, it is a bad precedent. In no event should a trial court in the first instance, or this Court on appeal, ever make or approve a property determination which is intertwined with the parental obligations of support for minor children. The property disposition should be retried.

On one other aspect of this case, I feel constrained to remark, perhaps in the nature of a caveat. The magistrate here found:

III. . . . That both parties are fit and proper people to have the care, custody and control of said minor children of the parties.

IV. That both of the minor children of the parties are happy, well adjusted children. *That the Plaintiff has had custody and control of the two minor children and that he has provided a comfortable, loving home for these children.*

V. That it would be detrimental to the welfare and best interests of these two minor children to remove them from the established patterns and relationships which they have been accustomed to here in Boise, Idaho. That after comparing how each party would serve the welfare and best interests of these minor children, the evidence shows that the children's best interest and welfare will be served *by having custody remain in the Plaintiff.* (Emphasis supplied.)

Obviously, the trial court, on finding both the father and mother suitable for assuming custody, proceeded to favor the father because he had had their custody, from which then flowed the belief that it would be detrimental to change the children's routine and environment. This is not an acceptable factor in reaching a trial court

award of child custody. It places that issue in the posture of being treated as a proceeding for the modification of custody. In a modification proceeding, custody has already been once placed in issue, fully litigated, and decided; the party seeking a modification carries the very difficult burden of establishing a change in circumstances, which change has taken place since the prior adjudication. Such a burden cannot *fairly* be placed on a parent who, on entering into a separation or divorce litigation, in the interests of children, acquiesces in the other parent assuming temporary custody. Creating such an advantage in one parent over the other, as this proposition tends to do, can only lead to intensifying the hostility attendant to court battles over custody. Who are the ultimate losers? The innocent children, of course.

Henceforth, fathers and mothers deserving of custody, who on separation would ordinarily voluntarily move to other quarters while the divorce action is processed through the courts, must recognize the consequences; a voluntary surrender of temporary custody to the other parent is not only going to prejudice a claim for custody, but place them at the exact disadvantage which attends a parent seeking modification. It has never been that way, and I am both surprised and startled to see the Court approve of such a procedure. Custody hereafter will have to be battled out at the preliminary stages of the divorce proceeding, and it can only result in exacerbation of controversies which, absent immediate direct confrontations, might work themselves out.

The issue of custody should be retried with directions that the prior custody of one parent, either voluntarily or by court order in summary proceedings, is not a proper consideration in making the final determination at trial. It is at trial that both parties should properly present the evidence which supports their respective contentions. The contrary rule approved today will work no benefit whatever to the minor children involved in parental disputes.

The mother here will be disappointed that her fight for custody has progressed through three tiers of court without any consideration shown to her contention that she was the victim of a well-conceived plan for "turning her out" after 12 years of marriage—sans children, sans property, and with a pittance for supporting and educating her husband. A reading of the father's testimony reveals that almost from the day of the marriage and the birth of the children, he found his wife to be an insufferable housewife, an incompetent mother, and a poor provider. He contrived to keep these thoughts to himself, however, until his degree was in hand, at which time he advised her that the marriage was over. The evidence is capable of being read as sustaining her contention. The magistrate might have concluded otherwise, and perhaps properly so, whereupon this Court would be bound by supported findings. Here, however, her contentions have received no recognition or discussion in the decisions of the courts below, nor in this Court. Such, taken with the improper weighting of temporary custody, clearly requires a retrial of the custody issue.

Finally, neither the trial court nor this Court has paid any heed to certain evidence in this case and the teaching of *Thurman v. Thurman*, 73 Idaho 122, 245 P.2d 810 (1952). Documentary evidence in the form of letters from the children to the mother strongly tends to establish that the father, having the unopposed opportunity, poisoned the susceptible minds of little children against their own mother. The letters speak for themselves.

Where shortly after the separation, the little girls wrote:

Dear Mommy,
I got a A on the test Daddy brout Home.
I LOVE YOU!!!!!
God loves you too.
Love Mary   Your Daughter
Hi, Mommy
In School we've been learning how to write words, I can write my my name you see. Anne. I Love you a whole lot. I am having pop corn right now. I wish you were here with me. Today in Dubugue we had a good time.

a year later the following is the Valentine's Day message the little girls sent their mother:

Hellow,

Why didn't you send us our stuff. I am not very happy about daddy sending you money. I wish you wouldn't make daddy send you the money *because* now we mite not get to go to the red wood forest or the ocean.

Love Mary and Anne

P.S. Even though we mite not get to go on vacation we want to stay with daddy. PPSS. We would rather have daddy than all the money in the world. Today is going to be a very happy Birthday for Mary because we came with Daddy.

The trial court apparently passed the letters off as insignificant, although on what basis I cannot see. In *Thurman,* in placing the children back with their mother, the Court spoke thus:

The acts and conduct of the custodial parent, resulting in the alienation of the love and affection which children naturally have for the other parent, is a vital and very serious detriment to the welfare of such children and is grounds for modification of the decree with respect to such custody.

.    .    .    .    .

A review of the entire record as to the evidence adduced at the hearing satisfies this Court that the father, together with his mother, has exerted great influence upon these youngsters in a very short period of time, through fear or otherwise, which is not for the best interest and welfare of the children, in that it has shaken their confidence in and their love and affection for their mother.

*Id.* at 128, 129, 245 P.2d at 814, 815. All of this is not to say that on the basis of these letters the trial court should have awarded custody to the mother. It is to say that if, as these letters tend to demonstrate, these little children were being influenced against their mother, all things were not equal. At the very least, the mother was entitled to know the consideration that this evidence was accorded by the trial court. As in *Thurman,* a party's entire presentation may

rest upon just such a single theory. Absent any explanation by the father as to how such letters were written by the little girls to their mother, and absent any excuse on his part for not having guided their susceptible minds in proper channels, I would hold the award of custody to the father is not sustained by but is contrary to the evidence.