CARTY, Plaintiff-Respondent, v. CARTY, Defendant-Appellant.

Supreme Court

*No. 76-064. Submitted on briefs January 9, 1979.—
Decided February 27, 1979.*
(Also reported in 275 N.W.2d 888.)

For the appellant the cause was submitted on the briefs of *George N. Kotsonis* and *Chronus & Kotsonis* of Milwaukee.

For the respondent the cause was submitted on the brief of *Lloyd J. Dickinson* and *Reinhart, Boerner, Van Deuren, Norris & Rieselbach, S. C.,* of Milwaukee.

WILLIAM G. CALLOW, J. The questions on this appeal from a divorce judgment are whether the trial court abused its discretion in dividing the property, in ordering the husband to pay limited alimony, and in requiring him to contribute to the wife's attorney fees. We affirm the judgment.

Peter Carty and Dorette Carty were married in Illinois on February 4, 1966. He was forty-two years of age; she was twenty-three. It was the second marriage for both: Mr. Carty, who had one child, had been divorced; Mrs. Carty, with no living children, was a widow. Following their marriage the Cartys moved several times and settled in Wisconsin in 1973. On December 9, 1975, on the basis of Mrs. Carty's undisputed testimony, the court granted her a divorce on the ground of Mr. Carty's cruel and inhuman treatment.[1]

---

[1] *See:* Sec. 247.07 (4), Stats. 1975.

Mrs. Carty testified at trial that she was thirty-three years of age and in excellent health. She had graduated from high school and had taken some night courses at a junior college. She was a trained secretary with the ability to take shorthand. As office manager and bookkeeper for an electrical consulting-engineering firm since April, 1974, she earned $700 per month, gross, $542, net. She had no other source of income.

Over the course of their nine-year marriage, Mrs. Carty performed a homemaker's duties in addition to working periodically. Her husband, a salesman, was often out of town. His mother, seventy-seven years of age at the time of trial, lived with the couple since their second year of marriage. Mrs. Carty testified that because she, her husband, and her mother-in-law each had furnishings for a full apartment they were only required to buy, after the marriage, a sofa, a dining-room set, a bedroom set, and the appliances. Mrs. Carty said she brought to the marriage about $1,000 in cash, $1,200 in furniture, and $3,000 in clothing and jewelry.

Mr. Carty, fifty-two, worked as a sales manager of door products for a company in Milwaukee. His only son was an adult. Mr. Carty's gross monthly earnings were $2,058; his take-home pay, $1,360.50. He estimated that he had an estate of $73,932.61 at the time of the marriage. This included an estimated $20,000 in various bank accounts and $15,000 in personal property, including his car. Mr. Carty further estimated, based mostly on tax returns, that during the period 1966–1974 he earned $165,195.13, while his wife earned $31,143.67.

After hearing the Cartys' testimony and that of two real estate appraisers, two jewelry appraisers, and Mr. Carty's mother, the trial court found the marital estate to consist of the following:

|     | ITEM | VALUE |
|-----|------|-------|
| 1. | Jointly owned condominium, valued at $39,000, subject to a mortgage of $35,584, leaving a net equity of | $ 3,416.00 |
| 2. | Mrs. Carty's jewelry and fur stole | 6,000.00 |
| 3. | Mr. Carty's car | 2,880.00 |
| 4. | Mrs. Carty's car | 1,710.00 |
| 5. | Stock and other securities | 9,187.25 |
| 6. | Savings and loan accounts | 36,766.23 |
| 7. | Life insurance on Mrs. Carty's life, cash surrender value of | 555.00 |
| 8. | Life insurance on Mr. Carty's life, total cash surrender value of | 12,617.58 |
| 9. | Household furniture and effects in Mrs. Carty's possession | 3,750.00 |
| 10. | Household furniture and effects in Mr. Carty's possession | 11,250.00 |
| | TOTAL | $88,132.06 |

In dividing the property, the court awarded Mrs. Carty 46.65 percent of the estate, consisting of her car, the life insurance policy on her life, the furniture and effects in her possession, her jewelry, her savings account of $101.91, and $27,500 in cash to be paid by Mr. Carty. The court was mindful of a prior order requiring Mr. Carty to pay $1,500 to Mrs. Carty to sustain herself pending the divorce judgment. The judgment further ordered Mr. Carty to pay limited alimony of $200 per month for thirty months, and to contribute $1,000 in addition to $450 he already paid toward Mrs. Carty's attorney fees which were estimated to be $2,500.

Mr. Carty appeals from the judgment. The question on appeal is whether the trial court abused its discretion in awarding the marital estate, in ordering Mr. Carty to pay limited alimony, or in requiring Mr. Carty to contribute toward the cost of Mrs. Carty's attorney fees.

Property division and alimony are matters within the trial court's discretion; the court's decision will not

be upset on review unless there is an abuse of discretion. *Van Wyk v. Van Wyk,* 86 Wis.2d 100, 108, 271 N.W.2d 860 (1978). There is an abuse of discretion where the court fails to consider the relevant factors, or makes a mistake of fact or an error of computation, or where the property division is inadequate or excessive. *Id.* The determinations as to property division and alimony are closely related. *Id.* at 110; *Johnson v. Johnson,* 78 Wis.2d 137, 145, 148, 254 N.W.2d 198 (1977).

Mr. Carty maintains that: (1) the court erred in fixing the value of Mrs. Carty's jewels and fur at only $6,000 and in determining that she had only one-fourth of the household goods; and (2) the court's award of 46.65 percent of the estate to Mrs. Carty is excessive.

■

The court's findings of fact will not be upset unless against the great weight and clear preponderance of the evidence. *Markham v. Markham,* 65 Wis.2d 735, 741, 223 N.W.2d 616 (1974). Two jewelry appraisers testified at the trial. Robert Haack set the value of Mrs. Carty's jewels at $2,060. He testified that his valuation represents the amount a seller would receive for the jewels. Arthur Anderson, another appraiser, fixed the retail value of Mrs. Carty's jewels and her fur stole at $13,410. He had the fur appraised by a furrier at $400. He said that a retailer usually marks jewelry up 100 percent. He testified that he would buy the jewelry from Mrs. Carty for less than $6,500 but more than $2,000.

■

On this evidence the court, reasoning that Mrs. Carty was in no position to sell her jewels and fur at retail, valued the items at $6,000. Mr. Carty, citing *Schwalbach v. Antigo Electric & Gas, Inc.,* 27 Wis.2d 651, 661, 135

N.W.2d 263 (1965), maintains that the proper figure is the retail price. In *Schwalbach,* the court stated that the replacement-cost-less-depreciation method of determining fair market value was an acceptable means of measuring damages in a tort action. The valuation here, however, serves quite a different purpose. The aim is not to measure loss but to reduce to monetary terms an item's worth to its holder in order to make a rational and informed division of the marital estate. The trial court's reasoning in rejecting a retail or replacement cost value was sound; the finding is not against the great weight and clear preponderance of the evidence.

The court's determination that Mrs. Carty had one-fourth of the household goods and effects is likewise supported by the evidence. The "one-fourth" figure is necessarily an estimate of what Mrs. Carty took with her when she left the marriage. Mr. Carty maintains that the furniture and furnishings were equally divided. The evidence shows that among the more substantial items taken by Mrs. Carty were the master bedroom set, a credenza, the dining-room table and buffet, and a black and white television. She furnished two of the three rooms in her apartment with furnishings from their condominium. The condominium had six rooms. She testified that Mr. Carty retained more of the furniture and household goods than she took. This included two remaining bedroom sets, a complete living-room set, another dining-room set, a complete den, and everything that was in a garage, including tools and a washer and dryer. On this evidence we cannot say that the trial court's finding that Mrs. Carty had one-fourth of the household goods and effect is against the great weight and clear preponderance of the evidence.

Mr. Carty next maintains that the court abused its discretion in awarding 46.65 percent of the marital

estate to Mrs. Carty. Prior to *Lacey v. Lacey,* 45 Wis.2d 378, 173 N.W.2d 142 (1970), this court generally considered an award of one-third of the net estate to be a liberal allowance, subject to increase or decrease depending on the circumstances. *Wilberscheid v. Wilberschied,* 77 Wis.2d 40, 44–45, 252 N.W.2d 76 (1977) ; *see: Gauger v. Gauger,* 157 Wis. 630, 633, 147 N.W. 1075 (1914). In *Lacey* the court expressly rejected the application of a strict formula for apportionment of the estate, emphasizing that each case must be decided on its own circumstances :

"Whatever is material and relevant in establishing a fair and equitable basis for division of the property of the parties may be considered. Such relevant factors certainly include the length of the marriage, the age and health of the parties, their ability to support themselves, liability for debts or support of children, general circumstances, including grievous misconduct, although a division is not a penalty imposed for fault. Whether the property award is in lieu of or in addition to alimony payments is a material factor. Whether the property was acquired during the marriage or brought to the marriage makes a difference." [Footnotes omitted.] 45 Wis.2d at 383–84.

The *Lacey* guidelines were generally codified in sec. 247.26, Stats., 1975, which provides in part:

"The court may also finally divide and distribute the estate, both real and personal, of either party between the parties and divest and transfer the title of any thereof accordingly, after having given due regard to the legal and equitable rights of each party, the length of the marriage, the age and health of the parties, the liability of either party for debts or support of children, their respective abilities and estates, whether the property award is in lieu of or in addition to alimony, the character and situation of the parties and all the circumstances of the case . . . ."

The trial court need not consider every one of the factors set forth in the statute or cases; moreover, it is up to the trial court to determine the weight and effect of the various considerations. *Wilberscheid,* 77 Wis.2d at 46. After determining that Mrs. Carty should be awarded limited alimony because she needed "some financial assistance for a short rehabilitative period," the trial court considered in its memorandum decision the factors it would take into account in dividing the property:

"In effecting a division of estate between the parties, in addition to what has already been set forth herein, we point out that we have considered the length of the marriage in fact, the ages of plaintiff and defendant, which are 33 and 52 years, respectively, the fact that each of them is in a good state of health, that there is no liability on the part of either for the support of children, that each is able to support herself or himself except as otherwise heretofore stated, that neither has any liability for substantial debts except with respect to the mortgage outstanding against the homestead condominium and which has been deducted from the gross estate of the parties and except for plaintiff's current obligations for expenditures which this Court feels were in excess of her actual needs, and all of the other facts and circumstances involved in and surrounding this case. We have further given consideration to the fact that plaintiff has worked periodically during the marriage and is presently a fully qualified secretary and that defendant has earned substantially more than plaintiff during their marital relationship. The Court has also given consideration to the fact that defendant had a substantial estate of his own at the time of the marriage which has been contributed to the marital estate for present division.

". . . .

". . . we have also given consideration to the sum of $1,500 which was paid to plaintiff during the course of the trial of this action pursuant to order of this Court

made on December 9, 1975, and to the provision of our judgment which will require defendant to contribute rehabilitative alimony towards plaintiff's support for the limited period up to December 31, 1978, as well as the requirement that defendant shall make a contribution toward plaintiff's attorney fees and disbursements in the sum of $1,000, which shall be in addition to the sum of $450 heretofore ordered and which has been paid."

In holding that an award of a substantial share (generally more than a third) of the estate to one spouse is not excessive, this court has given particular attention to four factors: (1) a long marriage; (2) a complete lack of any separate estate, coupled with the wife's inability to support herself; (3) the misconduct of the husband as a factor in the dissolution of the marriage; and (4) the amount of permanent alimony awarded to the wife. *Anderson v. Anderson,* 72 Wis.2d 631, 639, 242 N.W.2d 165 (1976).

Mrs. Carty began this divorce action in November, 1974, and moved out of the couple's condominium in March, 1975. The marriage lasted about nine years. In *Bussewitz v. Bussewitz,* 75 Wis.2d 78, 89, 248 N.W.2d 417 (1977), the court weighed a nine-year marriage in favor of a substantial award to the wife. More important than number of years is the extent of the wife's contribution to the marriage partnership. *See: Lacey, supra* at 382–83. While there were no children to support, Mrs. Carty performed all the duties of a homemaker for her husband, whose occupation required frequent travel. She testified as follows:

"*Q.* And during the course of the marriage, did you perform any services around the home?
"*A.* Yes. I kept house just like a normal housewife. Maybe a little more because my husband being out of town so frequently, I had to do what most men are

doing every day, in and out. Clean house, mow the yard, take care of whatever that was necessary until he came home. You have to act independently. You couldn't wait until he came back from out of town.

"Q. What precisely do you do around the home?

"A. Cleaned, cook, mow the grass when we had a house, go shopping, do the laundry, do the ironing, make sure that my husband when he was out of town, in other words, had sufficient clothing. .I mean his position, he had to look one hundred per cent all the time. That was my job. Keep him and the house and a job when I was working.

"Q. You were working while you were married?

"A. Periodically."

Second, there was no evidence at trial that Mrs. Carty had any separate estate. While her job will provide a means of self-support, Mr. Carty earned almost three times what his wife did. Relative earning capacity was considered in affirming an award of a substantial share of the estate to the husband in *Wilberscheid*, 77 Wis.2d at 48. Mrs. Carty forewent an opportunity to have a full-time job, develop her secretarial skills, and acquire seniority in order to make a home for her husband, whose occupation required them to move several times. Third, Mr. Carty's misconduct as a factor in the breakup of the marriage is undisputed. Finally, the court awarded no permanent alimony. *See: Bussewitz*, 75 Wis.2d at 89.

The trial court's articulation of the factors relevant to the exercise of its discretion is exemplary; there is no basis for concluding that the court abused its discretion in dividing the property.

In making an alimony award, the court should consider the same factors relevant to the property division determination. *Van Wyk*, 86 Wis.2d at 108. The trial court must also give consideration in making an alimony decision to the needs of the recipient and the ability

of the paying spouse to pay. *Id.* Need is established by examining the recipient's assets and income, special needs, age, health, and "customary station in life." Ability to pay is determined by income, assets, debts, age, and health. *Anderson,* 72 Wis.2d at 643. While these principles developed in the context of indefinite, rather than limited, alimony, we now hold that they are equally applicable to the decision to award limited alimony. *See: Johnson,* 78 Wis.2d at 151–54 (Abrahamson, J., dissenting). Limited alimony, first authorized by the legislature in 1971,[2]

". . . is a two-edged sword as to both parties. Both parties know the amount of alimony to be paid and the duration of the payments. The certainty of this award allows the parties to make plans without fears that the award will change. But if either party's circumstances change so that payment is unnecessary or impossible, the award will not change." *Johnson,* 78 Wis.2d at 146.

In this case the trial court, citing the needs of the wife, the husband's ability to pay, and the parties' station in life, awarded Mrs. Carty limited alimony of $200 per month for thirty months. The court relied on her assertion that she could not "make ends meet on her present earned income in view of her substantial budgetary requirements, the major part of which is for rent of $265 per month." Because the payments would be tax deductible, the court concluded that Mr. Carty, in a higher tax bracket, would not be aggrieved by the award. The court concluded that "financial assistance for a short rehabilitative period" was in order.

Mrs. Carty testified that she earned a net monthly income of $540.86. Her fixed monthly expenses were as follows:

[2] Chapter 220, Laws of 1971.

| | |
|---|---:|
| Rent | $265 |
| Electricity | 34 |
| Phone | 12 |
| Gasoline ($12/week) | 48 |
| Insurance | 28 |
| **Total** | **$387** |

This leaves a balance of $173.86 for food, clothing, and other expenses. This court has never held that an alimony award in excess of itemized expenses demonstrates, *per se,* an abuse of discretion. *Anderson,* 72 Wis.2d at 644. Mrs. Carty testified that, in addition to her fixed monthly expenses, she owed her father $3,000 and a bank $1,000 for personal loans. We cannot conclude that the trial court abused its discretion in awarding Mrs. Carty limited alimony.

Like the division of property and award of alimony, contribution toward the attorney fees of the other spouse is a matter within the trial court's discretion. An abuse of discretion may arise in the same ways it might occur in dividing the estate or awarding alimony: in failing to consider the relevant factors or apply the applicable law, or where the allowance is inadequate or excessive. *Anderson,* 72 Wis.2d at 645. Need, on the one hand, and ability to pay, on the other, must be established. *Id.* The assets, income, and liabilities of the parties must be considered. *Id.* The trial court's determination to award $1,000 in attorney fees, in addition to $450 already paid by Mr. Carty, was made in connection with its division of estate and award of limited alimony and constituted part of the overall adjustment of equities in the dissolution of this marital partnership. The trial court was apprised of the total amount of the attorney fees, which were about $2,500, in a memorandum filed

with the court before it rendered its decision. We cannot say that the award of attorney fees was an abuse of discretion.

*By the Court.*—Judgment affirmed.