In re the Marriage of:
Mary Patricia McLaren, Petitioner-Respondent,

v.

Sean Robert McLaren, Respondent-Appellant.

Court of Appeals

*No. 02–2451. Submitted on briefs April 9, 2003.—Decided May 14, 2003.*

2003 WI App 125

(Also reported in 665 N.W.2d 405.)

530

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Teri M. Nelson* of *Harris, Nelson & Zaeske, LLP*, Wauwatosa.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Therese M. Henke* of *Law Office of Therese M. Henke*, Mequon.

Before Brown, Anderson and Snyder, JJ.

¶ 1. SNYDER, J. Sean Robert McLaren (Sean) appeals from a judgment of divorce determining that the student loans incurred by Mary Patricia McLaren (Patricia), Sean's former wife, were marital debt. Sean argues that the trial court erred in equally dividing Patricia's student loans and that an unequal property division should have been granted for his contributions towards Patricia's education. Sean also argues that the

trial court erred when it failed to deviate from the percentage standards for child support yet ordered him to pay half of the children's daycare expenses in addition to the child support. We agree with the trial court that Patricia's student loans were marital debt. However, we conclude that the trial court erred when it purported to apply the percentage standards yet additionally ordered Sean to pay half of the children's daycare expenses. We therefore affirm that portion of the judgment addressing Patricia's student loans and reverse that portion of the judgment addressing child support and daycare expenses and remand it to the trial court to readdress the issue of child support.

## FACTS

¶ 2. Sean and Patricia were married on October 26, 1991. Two children were born during the marriage, Kelsey in March 1992 and Kyle in August 1994. On April 17, 2001, Patricia filed for divorce.

¶ 3. Sean and Patricia executed a partial Marital Settlement Agreement (MSA); the unresolved issues left for trial included property division and the division of marital debt. In addition, the primary child support issues left for trial were whether the trial court should deviate from the child support percentage guidelines and whether Sean should be ordered to pay a contribution towards the children's daycare expenses.

¶ 4. In determining the division of marital debts and assets, the trial court included all of Patricia's student loans in the marital estate. At the time of trial, Patricia's financial disclosure statement indicated her student loans totaled $25,905.83. The MSA stipulated and the trial court required that Patricia pay the student loans; however, to equalize the marital estate,

the trial court ordered Sean to pay the parties' marital consolidation loan through Allco Credit Union.

¶ 5. The trial court also indicated that it would not deviate from the child support percentage guidelines amount of 25% of Sean's gross monthly income. However, the trial court indicated that in addition to the 25% of his gross monthly income, Sean was required to contribute to one-half of the children's daycare expenses. On August 29, 2002, a judgment of divorce was entered. Sean appeals from the portion of the judgment declaring Patricia's student loans part of the marital estate and from the portion of the judgment requiring him to pay 25% of his gross monthly income in addition to one-half of the children's daycare expenses.

## DISCUSSION

¶ 6. Sean argues that the bulk of Patricia's student loans were premarital, that he received no benefit from the loans, that he derived no benefit from Patricia's education and that the trial court erred by including all of the student loans in the marital estate and failing to order that Patricia be solely responsible for the loans. We reject both Sean's characterization of the facts and his legal conclusions.

¶ 7. First, in the MSA, Sean and Patricia stipulated that Patricia was solely responsible for the student loans and the trial court so ordered. However, to offset that allocation and equalize the debt of the marital estate, the trial court ordered Sean solely responsible for payment of the marital consolidation loan through Allco Credit Union. It is this allocation that Sean actually challenges.

533

¶ 8. Marital assets and debts (collectively, the marital estate) include all of the property and obligations of either party which were acquired before or during the marriage unless specifically exempted by statute. *See* WIS. STAT. § 767.255 (2001–02).[1] The division of the marital estate lies within the sound discretion of the trial court. *See Long v. Long*, 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995). We must sustain discretionary determinations if we find that the trial court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Id.*

¶ 9. The trial court did not misuse its discretion when it found the student loans to be marital debt. WISCONSIN STAT. § 767.255(3) provides that all property not inherited or gifted is to be divided equally between the parties. The trial court

> may alter this distribution without regard to marital misconduct after considering all of the following:
>
> (a) The length of the marriage.
>
> (b) The property brought to the marriage by each party.
>
> (c) Whether one of the parties has substantial assets not subject to division by the court.
>
> (d) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services..

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

(e) The age and physical and emotional health of the parties.

(f) The contribution by one party to the education, training or increased earning power of the other.

(g) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

(h) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having physical placement for the greater period of time.

(i) The amount and duration of an order under s. 767.26 granting maintenance payments to either party, any order for periodic family support payments under s. 767.261 and whether the property division is in lieu of such payments.

(j) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

(k) The tax consequences to each party.

(L) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

535

(m) Such other factors as the court may in each individual case determine to be relevant.

*Id.* The trial court need not consider all of these factors. *Arneson v. Arneson*, 120 Wis. 2d 236, 254, 355 N.W.2d 16 (Ct. App. 1984).

¶ 10. Here, the trial court explained why it included the student loans as marital debt:

> This is a very difficult case .... I see a young couple that got married young. She had three years in at U.W. LaCrosse. He is a year ... behind her in high school; then joined the navy.
>
> They had a child that probably they didn't plan on that interrupted. [sic] ....
>
> She then drops out of U.W. LaCrosse. She may not have been doing terrifically academically. I think it's undisputed that she was placed on probation.
>
> They then moved to Virginia where he is stationed. She immediately gets a job as a waitress at the Yacht Club and is working there until their first child is born.
>
> She then goes to a junior college down there when the student loans become due. They remain down there, I think, until April of '93, at which time they come back, and Mrs. McLaren once again goes to work ....
>
> In the meantime, Mr. McLaren is also working full time.
>
> They were incurring this debt. Student loans come due again and I believe it was in the Fall of 1994 she tried to go back to school. She was pregnant or had just had their second child, according to my notes, and simply caused too much stress to go to school, trying to

536

work, and take care of household responsibilities that they had; so she quit, and worked.

She then worked at the medical billing office. Worked for them. Went back to school after she got the job at Leeson with some tuition reimbursement, and in that regard I find this case differs from the cases that we have been talking about where one spouse worked full time, paid the household expenses, and paid the other spouse's, basically, enabled the other spouse to go to school.

I view this based on the evidence as being much more of a joint partnership albeit kind of a silent partnership on what the degree was going to be for, things of that nature, but clearly was in anticipation that the income, that they would both benefit from that.

Over the years it appears that they did not distinguish the premarital student loans from the marital student loans. They were always there. Decisions were made to defer those loans; they weren't paid down.

I think there has been a transmutation of those debts and I think they have to be dealt with in the context of this marriage as marital assets . . . .

I recognize the length of this marriage. It is, well, not short; it's not, by any stretch of the imagination, long term, but certain decisions were made during the marriage which resulted in those loans not being paid down, and I think that it would have been paid with marital assets.

¶ 11. The trial court considered the length of the marriage, the contributions of both Sean and Patricia to the marriage, Sean's contribution to Patricia's education and other factors the court deemed relevant. The trial court examined the relevant facts, considered the

537

proper factors of Wɪs. Sᴛᴀᴛ. § 767.255(3) and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *See Long*, 196 Wis. 2d at 695. The trial court appropriately exercised its discretion in including the student loans in the marital estate and ordering Sean to pay the marital consolidation loan to equalize Patricia's payment of the student loans.

¶ 12. Sean also argues that the trial court erred when it failed to deviate from the percentage standards for child support yet ordered him to pay half of the children's daycare expenses in addition to the child support. We agree.

¶ 13. The determination of appropriate child support is committed to the sound discretion of the trial court. *Weidner v. W.G.N.*, 131 Wis. 2d 301, 315, 388 N.W.2d 615 (1986). Whether the trial court properly exercised its discretion is a question of law. *Seep v. State Pers. Comm'n*, 140 Wis. 2d 32, 38, 409 N.W.2d 142 (Ct. App. 1987). We will sustain a discretionary act if we find that the trial court examined the relevant facts, applied a proper standard of law and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *State v. Gudenschwager*, 191 Wis. 2d 431, 440, 529 N.W.2d 225 (1995).

¶ 14. A trial court, in setting child support, is statutorily obligated to use the percentage standards set by the Department of Health and Family Services. Wɪs. Sᴛᴀᴛ. § 767.25(1j). The percentage standards which the Department established are set forth in Wɪs. Aᴅᴍɪɴ. Coᴅᴇ ch. DWD 40 and currently require child support for two children to be set at 25% of the payer's base

income. A trial court may only depart from the percentage standards "if, after considering the factors listed in § 767.25(1m) . . . the court finds, by the greater weight of the credible evidence, that the use of the percentage standard is unfair to the child or to any of the parties." *Kjelstrup v. Kjelstrup*, 181 Wis. 2d 973, 975, 512 N.W.2d 264 (Ct. App. 1994); *see also* § 767.25(1m). The factors that courts may consider when contemplating a deviation from the percentage standards are found at § 767.25(1m):

(a) The financial resources of the child.

(b) The financial resources of both parents.

(bj) Maintenance received by either party.

(bp) The needs of each party in order to support himself or herself at a level equal to or greater than that established under 42 USC 9902 (2).

(bz) The needs of any person, other than the child, whom either party is legally obligated to support.

(c) If the parties were married, the standard of living the child would have enjoyed had the marriage not ended in annulment, divorce or legal separation.

(d) The desirability that the custodian remain in the home as a full-time parent.

(e) The cost of day care if the custodian works outside the home, or the value of custodial services performed by the custodian if the custodian remains in the home.

(ej) The award of substantial periods of physical placement to both parents.

(em) Extraordinary travel expenses incurred in exercising the right to periods of physical placement under s. 767.24.

(f) The physical, mental and emotional health needs of the child, including any costs for health insurance as provided for under sub. (4m).

(g) The child's educational needs.

(h) The tax consequences to each party.

(hm) The best interests of the child.

(hs) The earning capacity of each parent, based on each parent's education, training and work experience and the availability of work in or near the parent's community.

(i) Any other factors which the court in each case determines are relevant.

¶ 15. Here, the trial court ordered Sean to pay 25% of his gross monthly income, in accordance with WIS. ADMIN. CODE § DWD 40.03(1)(b). However, the trial court also ordered Sean to pay 50% of the monthly child care expenses in addition to 25% of his gross monthly income. Looking at WIS. STAT. § 767.25, the only provision to split child care costs, in addition to child support, is child care costs related to health insurance and medical costs. Sec. 767.25(4m). Section 767.25 makes no provision as to splitting child care beyond what is provided in the child support payments.

¶ 16. We therefore conclude that the trial court did, in fact, deviate from the child support guidelines by ordering payment of child care expenses in addition to 25% of Sean's gross monthly income. Thus, the trial court was required under WIS. STAT. § 767.25 to explain

its deviation from the guidelines. The trial court did explain why it awarded daycare expenses in addition to 25% of Sean's income:

> With regard to child care or daycare expenses, I believe both parties should bear one-half of the expense and I will order that. The reason for that is that day care allows both parents to work, provides secure care for the children. The children are young. I don't know that you could do this any less, for any less cost than they were doing this, and I don't think it should be an individual responsibility of Mrs. McLaren. One or the other of them would have to quit working if it wasn't for day care, in my opinion, particularly, during the summer.

However, the trial court also simultaneously (and inconsistently) asserted that it was not going to deviate from the child support percentage standards and did not address any of the § 767.25(1m) factors required for such a deviation.

¶ 17. Because the trial court did, in fact, deviate from the child support percentage standards when it ordered Sean to pay one-half of the daycare expenses and did so without addressing the WIS. STAT. § 767.25(1m) factors, the trial court erroneously exercised its discretion. We therefore reverse the child support order in its entirety and remand this matter to the trial court to conduct further proceedings on the issue of child support.

## CONCLUSION

¶ 18. We agree with the trial court that Patricia's student loans were marital debt. Thus, when the MSA assigned payment of those student loans to Patricia, the trial court properly ordered Sean to pay the Allco

marital consolidation loan to equalize Patricia's payment of the student loans. However, we conclude that the trial court erred when it purported to apply the percentage standards yet additionally ordered Sean to pay half of the children's daycare expenses. We therefore affirm that portion of the judgment addressing Patricia's student loans and reverse that portion of the judgment addressing child support and daycare expenses and remand this matter to the trial court to readdress the issue of child support consistent with this decision.

¶ 19. Costs are denied to both parties.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.