In re the Marriage of:

Deanne M. Weiler, Petitioner-Appellant,

v.

Brent R. Boerner, Respondent-Respondent.

Court of Appeals

*No. 03–2606. Oral argument November 2, 2004.—Decided March 9, 2005.*

2005 WI App 64

(Also reported in 695 N.W.2d 833.)

520

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Richard E. Reilly* and *Jennifer A. Lino* of *Gimbel, Reilly, Guerin & Brown*, Milwaukee. There was oral argument by *Richard E. Reilly*.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Patricia L. Grove* of *Halling & Cayo, S.C.*, Milwaukee. There was oral argument by *Gregory J. Banchy*.

Before Anderson, P.J., Brown and Snyder, JJ.

¶ 1. SNYDER, J.   Deanne M. Weiler appeals from a divorce judgment, contending that the trial court erro-

neously exercised its discretion by imputing enhanced education income to her in the child support, maintenance, property division, and marital debt provisions. We agree that the trial court erred in imputing such income to child support and reverse. However, we reject Deanne's contention that enhanced education income may not be considered in determining maintenance, property division, and marital debts and affirm as to those determinations.

## BACKGROUND

¶ 2. Deanne and Brent R. Boerner were married on August 4, 1984, and twin children were born to the marriage on December 17, 1991. At the time of the divorce, Brent earned approximately $85,092 annually ($7,091.06 per month) and Deanne earned $35,568 annually ($2,964 per month).

¶ 3. Brent had a Bachelor of Business Administration (BBA) degree from the University of Wisconsin-Oshkosh at the time of the marriage and Deanne was one academic year short of obtaining an undergraduate degree from Marquette University. Deanne obtained a Bachelor of Arts (BA) degree in 1985, a master's degree from the University of Wisconsin-Milwaukee in rehabilitation counseling in 1988, and a doctorate degree (Ph.D.) in psychology in 2000. On June 6, 2003, the date of the divorce, Deanne had twice taken the Wisconsin test to be a licensed psychologist but had not been successful. Deanne was, therefore, employed as a clinical therapist at the time of the divorce.

¶ 4. The focus of the trial court proceedings and of this appeal is the enhanced education that Deanne received during the marriage. Brent argued that he should be compensated for the enhanced education by

way of maintenance and/or property division. Brent obtained expert input from vocational counselor Timothy J. Riley and economist Dr. Stuart M. Glosser[1] as to the value of Deanne's enhanced education and the income potential it would generate. Brent calculated Deanne's expected enhanced income by using Deanne's prior testimony and referring, in part, to the expert opinion evidence presented by Riley and Dr. Glosser. Deanne presented evidence of her current therapist income of $35,568 per year, her status as professionally unlicensed, and her desire and intent to pursue and obtain professional licensing.

¶ 5. Riley opined that Deanne would earn $55,000 to $65,000 per year as a full-time psychotherapist in private practice. He further testified that the $55,000 to $65,000 per year income projection assumed that Deanne had passed the Wisconsin test and had acquired her license. Riley later suggested that this income projection would apply regardless of whether Deanne obtained her psychology license.

¶ 6. Dr. Glosser testified that Brent asked him to calculate the enhanced earnings of receiving a Ph.D. in psychology. Dr. Glosser opined that to a reasonable degree of economic probability the enhanced earnings are approximately $656,000. Dr. Glosser assumed Deanne would work for twenty-six years and would retire at age sixty-five. He also testified that he expected Deanne to earn $53,000 per year through 2007; $59,000 in 2008; $66,000 in 2009; and $80,000 in 2010. Dr. Glosser factored in inflation, taxes, and life probability in his projection methodology.

---

[1] Dr. Glosser testified that he had a Ph.D. in economics and had coauthored an article entitled *"Enhanced Earning Capacity: The Most Ignored and Undervalued Asset in the Marriage."*

¶ 7. Brent represented that Deanne could earn $123,520 to $148,480 per year if she obtained professional licensing. Unlike Riley's calculations, Brent's calculations failed to account for uncollected fees, and he conceded that if clients failed to pay for Deanne's professional services, his income projection was high.

¶ 8. The trial court acknowledged that Deanne had taken and failed the psychology license test twice, but opined that "there is every reason to hope and believe that the third time will be the charm for [Deanne] having nearly obtained that licensure the last time around." The trial court noted that "the birth of twins and the time and effort that it takes to care for and raise those children is a factor and the court does not intend to diminish that by any means here today." Further, the court concluded, "I don't think we have the circumstance where there was a traditional sacrifice on the part of [Brent] foregoing his education. He was able obviously to continue to pursue his career."

¶ 9. The trial court concluded that "a hundred thousand dollars is not immediately available and that [figure] doesn't necessarily reflect the uncollectibles but we have the other factor that I believe the license is obtainable within this calendar year and those would in effect balance each other out." The court valued the education degrees received by Deanne during the marriage at $50,000, assigned the education loan balance of $14,053 to Deanne as her sole and separate debt, and imputed income to Deanne at the time of the divorce at $100,000 per year.

## ISSUE

¶ 10. Deanne challenges the trial court's legal authority to use her enhanced education to determine child support, maintenance, property division, and

marital debts. We will first address the application of marital enhanced education to the maintenance, property division, and debt assignment determinations.

## MAINTENANCE, PROPERTY DIVISION AND MARITAL DEBT

¶ 11.   Generally, maintenance and property division determinations are reviewed under the erroneous exercise of discretion standard. *Van Offeren v. Van Offeren*, 173 Wis. 2d 482, 492, 496 N.W.2d 660 (Ct. App. 1992); *Jasper v. Jasper*, 107 Wis. 2d 59, 63, 318 N.W.2d 792 (1982). We affirm the trial court's decision as long as it reached a rational decision based upon the application of the correct legal standards to the facts of the case. *Smith v. Smith*, 177 Wis. 2d 128, 133, 501 N.W.2d 850 (Ct. App. 1993). Failure to apply the correct legal standards is an erroneous exercise of discretion. *LeMere v. LeMere*, 2003 WI 67, ¶ 14, 262 Wis. 2d 426, 663 N.W.2d 789. We decide any questions of law which may arise during our review of an exercise of discretion independently of the trial court. *Id*.

¶ 12.   The trial court imputed enhanced education value and income to Deanne in order to achieve an equalization of income of the parties for the purpose of maintenance and property division. As to maintenance, the court stated:  "The ultimate [maintenance] decision . . . is that the benefit to [Brent] because of the support of the enhanced earning capacity of [Deanne] is in the form of no maintenance being awarded to [Deanne] . . . ." Further, the court stated:  "[I]n terms of the enhanced value of the degree obtained and the pending licensure of [Deanne] . . . I do not believe that any maintenance is due and owing to [Deanne] at any

time. As far as [Brent] is concerned, I am going to hold open maintenance until the minor children's age of majority . . . ."

¶ 13. Maintenance payments are subject to, among other factors, consideration of statutory factors, including the "educational level of each party at the time of marriage and at the time the action is commenced," WIS. STAT. § 767.26(4) (2003–04),[2] and the "contribution by one party to the education, training or increased earning power of the other," § 767.26(9). *See Haugan v. Haugan,* 117 Wis. 2d 200, 208, 343 N.W.2d 796 (1984).

■

¶ 14. Turning to the property division, we will not disturb the trial court's division of marital property unless there is an erroneous exercise of discretion. *Jasper,* 107 Wis. 2d at 63. Thus, we will uphold the trial court's discretionary determination of property division if it applied proper legal standards based upon facts appearing in the record. *See id.* at 64. WISCONSIN STAT. § 767.255(3)(g) provides that the trial court may consider, among other factors, "[t]he earning capacity of each party, including educational background, training, [and] employment skills" in determining marital property division.

¶ 15. *Haugan* teaches: "The legislature recognized in the Divorce Reform Act of 1977 that the wife or husband who invested in a spouse's education should be compensated upon divorce." *Haugan,* 117 Wis. 2d at 207. "Such compensation may be accomplished under the statutes through *maintenance payments, property division, or both." Id.* at 208 (emphasis added).

[2] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

¶ 16. Deanne contends that the trial court wrongly double counted the value of the enhanced education benefit for the purpose of determining property division and maintenance. We disagree. There is no absolute rule against double counting.[3] *Hokin v. Hokin*, 231 Wis. 2d 184, 203, 605 N.W.2d 219 (Ct. App. 1999). Here, *Haugan* provides the trial court with the authority to consider such enhanced education for the determination of "maintenance payments, property division, *or both." Haugan*, 117 Wis. 2d at 208 (emphasis added).

¶ 17. The trial court held maintenance open to Brent solely for the purpose of ensuring payment of debts and obligations until the children attain the age of eighteen years. A trial court is not precluded from holding open a determination on maintenance as long as the proper statutory criteria are considered. *Preiss v. Preiss*, 2000 WI App 185, ¶ 22, 238 Wis. 2d 368, 617 N.W.2d 514. Because the trial court followed the applicable Wisconsin statutes and applied the *Haugan* legal standard to the facts of this case concerning marital enhanced education, there was no erroneous exercise of discretion, and we affirm the trial court's holdings as to maintenance and property division.

¶ 18. The trial court excluded the outstanding balance of Deanne's education enhancement debt, $14,053, from the marital estate and assigned it as

---

[3] The children receive nothing from maintenance or property division and, like a pension benefit, an enhanced education benefit would be counted "for the first time between the parent and the child" for child support purposes. *Cook v. Cook*, 208 Wis. 2d 166, 181, 560 N.W.2d 246 (1997).

Deanne's sole and separate debt. Deanne objects. It is well established that a marital estate "include[s] all of the property and obligations of either party which were acquired before or during the marriage unless specifically exempted by statute." *McLaren v. McLaren*, 2003 WI App 125, ¶ 8, 265 Wis. 2d 529, 665 N.W.2d 405. In *McLaren*, we held that the trial court did not erroneously exercise its discretion when it found the student loans to be marital debt. *Id.*, ¶ 9. Here, based upon Deanne's enhanced education benefit, the trial court found that the debt was not marital. We conclude that the trial court properly examined the facts, considered the relevant law, used a rational process in assigning the education debt solely to Deanne and did not, therefore, erroneously exercise its discretion.

## CHILD SUPPORT

¶ 19.   The determination of child support rests within the sound discretion of the trial court and will not be overturned unless the trial court abuses its discretion. *Dittberner v. Dittberner*, 54 Wis. 2d 671, 676, 196 N.W.2d 643 (1972). Proper discretion is exercised where the record reflects that the trial court considered the needs of the custodial parent and children and the ability of the noncustodial parent to pay child support. *See id.*

¶ 20.   The criteria generally employed in making a child support determination are well settled:

> These needs are ordinarily established by a consideration of the wife's assets and income, her special needs, the age and health of both the wife and children and their customary station in life. The ability of the husband to pay is usually determined by his income,

assets and debts as well as his age and health. *These determinations are to be made upon the basis of the circumstances existing at the time of the divorce.*

*Anderson v. Anderson,* 72 Wis. 2d 631, 643, 242 N.W.2d 165 (1976) (emphasis added).

¶ 21.   Here, the trial court ordered that child support be held open. The court supported that determination based upon "the asset of [Deanne's] Ph.D. in psychology" and upon her imputed enhanced education income:   "[T]here is an appropriate application of the value of that [education] degree in terms of the *child support,* maintenance and property division that will be reflected in the balance of my decision here today." (Emphasis added.)

¶ 22.   The trial court provided the following rationale for holding child support open:

> Child support is held open at this time and indefinitely. I am concerned as the parties had expressed about the potential for litigation in that regard in the future, but I am also mindful the court cannot predict everything and that there may be circumstances that would require one party or the other to pay child support to their other ex-spouse, and I think under the circumstances it is appropriate to leave that open. I also believe that under the circumstances that by providing some of the assets to the petitioner that the pursuit of that licensing should be immediate; that the court attempted to make funds available for that and upon obtainment of that I think there should be an approximation of equalization of the incomes here that would not make child support necessary. And so I am holding that open.

¶ 23.   We first note that Brent never requested that Deanne's enhanced education be considered in determining child support. Second, contrary to the trial

530

court's rationale for holding child support open, *Haugan* does not address child support in the context of enhanced education benefits during marriage. Third, the record does not include any discussion, determination or request that the trial court consider "shirking" on the part of Deanne.[4] Fourth, while custody and placement of the children were part of the parties' Marital Settlement Agreement (MSA) approved by the trial court and incorporated into the judgment, any evidence of the impact of the MSA upon child support is lacking. The MSA and judgment address the children's variable expenses, life insurance, heath care insurance, and uncovered expenses. However, a joint legal custody order does not affect the amount of child support. *See* Wis. Stat. § 767.25(7).

¶ 24. Whether an enhanced education benefit may be applied to child support is a question of law which we review independently. *See LeMere*, 262 Wis. 2d 426, ¶ 14. During the hearing, Dr. Glosser responded to Brent's counsel as follows:

> Q  You have no way of knowing now what [Deanne] will actually earn over the rest of her professional lifetime, correct?
>
> A  No, I do not have a crystal ball.

---

[4] The question of whether the trial court relied on "shirking" in ordering child support held open was raised by Deanne in her appellate brief. Brent does not refute that "shirking" or "Deanne's voluntary decision to 'not work hard enough' " was part of the court's reasoning for holding child support open, and we need not address that concept further. *See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979).

¶ 25.  As suggested in Dr. Glosser's opinion, child support does not lend itself to a crystal ball analysis. Child support determinations are to be made upon the basis of the circumstances existing at the time of the divorce. *Anderson,* 72 Wis. 2d at 643. We are satisfied that *Haugan* does not support the trial court's determination to hold child support open. An exercise of discretion based on a mistaken view of the law is an erroneous exercise of discretion. *Schmid v. Olsen,* 111 Wis. 2d 228, 237, 330 N.W.2d 547 (1983).

■

¶ 26.  Whenever a divorce judgment is entered the trial court shall order "either or both parents to pay an amount reasonable or necessary to fulfill a duty to support a child." Wis. Stat. § 767.25(1)(a). A hold-open determination indicates that an order for child support is not necessary based upon current circumstances. Because we are unable to discern any rationale for the child support hold-open order (other than reconciliation for Deanne's enhanced education benefit) and because the decision lacks sufficient independent rationale based upon the needs of the children and the current financial circumstances of the parties, we conclude that the trial court erroneously exercised its discretion. We must therefore reverse and remand on the issue of child support.

¶ 27.  In sum, we are satisfied that the trial court had the authority to consider the enhanced education benefit received by Deanne during the marriage in ordering maintenance and property division. We reverse and remand the child support hold-open order for further consideration by the trial court. While we reverse only as to the child support order, on remand

the trial court may in its discretion reconsider mainte-
nance and property division.[5]

*By the Court.*—Judgment affirmed in part; reversed
in part and cause remanded with directions.

---

[5] While property division, maintenance, and child support
differ from each other, they overlap and are related in respect to
the total financial circumstances of the parties. *See Cook,* 208
Wis. 2d at 180. Also, under the statutes the trial court is
required to consider property division in setting child support.
*Id.*