**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 12, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2024AP282**

**STATE OF WISCONSIN**

Cir. Ct. No. 2022FA31

**IN COURT OF APPEALS
DISTRICT III**

IN RE THE MARRIAGE OF:

MICHELLE DIANE LEISZ,

    PETITIONER-RESPONDENT,

  V.

DONALD JOHN LEISZ,

    RESPONDENT-APPELLANT.

APPEAL from a judgment of the circuit court for Pierce County: ELIZABETH L. ROHL, Judge. *Affirmed.*

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Donald John Leisz appeals from a judgment of divorce ending his marriage to Michelle Diane Leisz.[1] Donald challenges the portions of the circuit court's judgment regarding maintenance, property division, and placement of the parties' minor children. For the reasons that follow, we reject all of Donald's arguments on appeal, and we affirm the circuit court's judgment of divorce.

## BACKGROUND

¶2 Donald and Michelle were married on July 22, 1995. Divorce proceedings were commenced on March 15, 2022. The parties have two minor children, who were, at the time of the trial, 17 and 13 years old. The circuit court granted a judgment of divorce to the parties on December 28, 2023.[2]

¶3 Prior to granting the parties a divorce, the circuit court held a bench trial. Several witnesses testified, and we will discuss their testimony as necessary below. The primary conflict in this case revolved around the parties' employment history and its resulting impact on the court's judgment regarding child support, maintenance, property division, and placement. After the parties were married, Donald enrolled in college and graduated with a degree in civil engineering. Donald worked in that field until the couple's daughter was born, at which time he and Michelle made the joint decision that Donald would quit his job and stay home. Testimony revealed that the decision for Donald to stay home was based on the parties' not wanting their child to go to daycare; Michelle making more

---

[1] Because the parties share a surname, we refer to them by their first names throughout the remainder of this opinion.

[2] The circuit court subsequently entered an amended judgment on January 10, 2024.

2

money at the time; and, according to Michelle, Donald "hat[ing] his job" and the job being "hard on his body."

¶4     When the parties' second child was born, they discussed changing the arrangement. Around this time, Michelle's "job went under," and she suggested that they "share the responsibility for earning." However, Donald continued to stay at home with the children, and Michelle found a new position.

¶5     In approximately 2015, when both children were in school, Michelle explained that she actively tried to convince Donald to return to the workforce, even applying for jobs for him and suggesting he try another field of work. However, according to Michelle, Donald "really wasn't interested in any of that." Donald agreed during his testimony that Michelle "started to push on the job," although he claimed it was in 2017. Thus, Michelle argues that "[w]hile the parties agreed that when [their first child] was born, [Donald] would be a stay-at-home parent, the parties did not agree on how long that would last, nor who would take on that responsibility when [their second child] was born."

¶6     Donald did not work outside the parties' home until they separated in 2020, when Donald took a position with Menards. Based on the evidence presented, Donald is self-supporting on his current salary. He is currently living in the marital home, which has no mortgage, and Michelle covers all expenses for the children. Donald testified, however, about several things that he would like to spend money on, but does not have the savings for, including property improvements, fishing trips, and an updated car or truck.

¶7     Since 2020, the parties' children have lived predominantly with Michelle, and Donald has spent only a few overnight visits with the children during this period. According to Michelle, she tried to make placement plans with

Donald and to make the children available to see him, but Donald would tell her "when he wanted to see them, and [she] did [her] best to make them available for … him." Michelle testified that Donald had seen the children 40 times in 24 months based on a "log" she kept of their visits from 2021 to 2023. The evidence also revealed that instead of communicating with Michelle, Donald began communicating placement plans directly with the children.

¶8      The guardian ad litem (GAL) provided a recommendation regarding the children's placement at the trial. As relevant here, the GAL recommended that Michelle be awarded primary placement, explaining that "given the last three years, at least since [Michelle] has moved from the marital residence, [and] the extremely minimal amount of time that [Donald] has had contact with the children, I don't believe that that supports him having [more time] … as he's requesting." The GAL stated that "the wishes of the children weigh heavier in this instance than some of the other factors." According to the GAL, the children wished to continue the current placement, expressing "a strong reticence to spending overnights with [Donald] at the … prior marital residence." The GAL explained that their son expressed concerns with his room being "filled with a lot of items … and a mess," and their daughter wanted "some time also to work in her room before having overnights there because it's set up for a younger child." Nevertheless, the GAL explained that the kids generally enjoy spending time with Donald. The GAL also stated that the children were uncomfortable with Donald putting them in the middle of placement discussions.

¶9    The circuit court reached the following conclusions based upon its review of the evidence and the factors in WIS. STAT. ch. 767 (2023-24).[3] Although Donald had requested maintenance, the court concluded that he was not entitled to maintenance at that time. The court also did not order child support, explaining that Donald was self-supporting, but if Donald were "ordered to pay child support, [he] would not have the same ability to meet his financial needs and would perhaps trigger a maintenance award." However, the court specifically held "open child support and reserve[d] maintenance to [Donald] until the youngest minor child emancipates."

¶10    On the issue of property division, the circuit court ordered an equalization payment of $50,000 to Donald. The court observed, however, that even with the equalization payment, an unequal division of property remained. According to the court, "the lion's share of [Michelle's] awarded property comes from her retirement accounts," while Donald was awarded the marital home, which had no mortgage, as well as most of the household furnishings, "which was likewise not factored in financially." The court explained that as a result, Michelle "must make rental payments or otherwise pay housing costs" and "will be responsible for [the children's] variable expenses." Thus, the court stated that "[d]espite the fact that this is not a perfectly even split, the court believes it to be fair and reasonable under all the circumstances."

¶11    Finally, the circuit court awarded Michelle primary placement of the children. The court considered all the relevant WIS. STAT. § 767.41(5) factors for custody and physical placement, including that the teenage children wished to

---

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

remain with Michelle; that the children expressed, as relayed by the GAL, "a reluctance to spend time overnight with their father" and needed "some time to make themselves feel comfortable as they haven't stayed overnight in the home for the last three years"; and that "[s]ince separating, [Donald] has exercised almost no placement with the children." Donald appeals.

## DISCUSSION

### I. Maintenance

¶12    Donald first challenges the circuit court's decision not to award maintenance. A maintenance decision in a divorce case is committed to the circuit court's discretion. *LeMere v. LeMere*, 2003 WI 67, ¶13, 262 Wis. 2d 426, 663 N.W.2d 789. We will not disturb that decision on review unless there has been an erroneous exercise of discretion.[4] *Id.* We will uphold the court's discretionary decision as long as the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Id.* (citation omitted). Importantly, "we generally look for reasons to sustain discretionary decisions." *Gerrits v. Gerrits*, 167 Wis. 2d 429, 441, 482 N.W.2d 134 (Ct. App. 1992) (citation omitted).

---

[4] We note that throughout their briefing before this court, both Donald and Michelle use the phrase "abuse of discretion" when referring to our standard of review. In 1992, our supreme court replaced that phrase with "erroneous exercise of discretion." *See, e.g.*, *Shirk v. Bowling, Inc.*, 2001 WI 36, ¶9 n.6, 242 Wis. 2d 153, 624 N.W.2d 375. In her response brief, Michelle acknowledges the difference in terminology, but she incorrectly states that previous decisions of this court use these phrases "interchangeably." She then explains that she is choosing to use the "abuse of discretion" terminology in her brief. We reiterate that, in Wisconsin, the phrase "erroneous exercise of discretion" has *replaced* any other previously used phrases.

¶13     The touchstone of the maintenance analysis is the list of statutory factors enumerated in WIS. STAT. § 767.56.  *See **LaRocque v. LaRocque***, 139 Wis. 2d 23, 31-32, 406 N.W.2d 736 (1987).  These factors "reflect and are designed to further two distinct but related objectives" within a maintenance award: "to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties in each individual case (the fairness objective)." ***Id.*** at 32-33.

¶14     In this case, Donald argues that the "overall balance of the factors weighs heavily towards" awarding him maintenance, "both regarding the parties relative needs and his need for support as well as the fairness factor referenced in" ***LaRocque***.  As a point of clarification, Donald does not argue that the circuit court erroneously exercised its discretion by failing to consider the relevant statutory factors.  In truth, this argument would fail given that the court's divorce judgment discusses the evidence related to each factor in detail.  Instead, Donald essentially disagrees with the conclusions that the court reached based on the evidence, and he argues that certain factors should have been weighed more heavily in favor of a maintenance award.

¶15     Donald spends seven pages of his brief-in-chief discussing his view of each of the WIS. STAT. § 767.56 factors and the application of those factors to the facts of this case.  He makes the following arguments: (1) the length of Donald and Michelle's marriage weighs heavily in favor of maintenance; (2) the court failed to address Donald's "inability to do certain physical labor because of back

issues";[5] (3) the court failed to "recognize that [Donald] helped support [Michelle] before they were married by allowing her to use his car to get to and from school";[6] (4) the court failed to "recognize that the reason [Donald] is unable to use [his civil engineering] degree is because he sacrificed his job and career in order to stay home with the children and take care of the house"; (5) the court found that Donald was "earning at capacity to what he can at the current time," but it failed "to acknowledge that the reason that" Donald was out of the workforce and lost income potential was because he "sacrificed his career for the benefit of the family"; (6) the court found that Donald "already is self supporting," but it "ignore[d] the standard of living enjoyed during the marriage"; (7) "[t]he [c]ourt seem[ed] to rely heavily on the idea that because [Donald] has lived within his post separation means that he is not entitled to spousal maintenance"; (8) "the help that [Donald] provided and support of taking care of the kids so [Michelle] could work more" should weigh more heavily in favor of maintenance; (9) the court erred by treating the money Donald "would be spending on child support as maintenance"; and (10) the court's decision was "unfair" because "[t]his is a long term marriage where the party earning less money sacrificed his earning potential to stay home and take care of the kids so the other party could focus on her career."

---

[5] Donald testified that he would not physically be able to do the work he was doing before their daughter was born in the civil engineering field because his "back's been out a couple times." Donald did not testify that his back pain would impact another job, and he did not submit any testimony from a medical professional supporting his testimony.

[6] Michelle notes, however, that while she did borrow Donald's car for transportation to and from school prior to the marriage, she was required to do so because Donald totaled her car.

¶16 None of the issues presented by Donald cause us to question the circuit court's maintenance decision, and we conclude that Donald has not established that the circuit court erroneously exercised its discretion by denying him a maintenance award. We note first that beyond the citation to *LaRocque*, Donald does not cite any legal authority in support of his arguments. Essentially, he asserts that the court applied an improper standard of law by not sufficiently considering the *LaRocque* fairness factor. His arguments, however, are based entirely on his disagreement with the weight that the court gave to each factor or the consideration the court gave to his own testimony.

¶17 The weight to be accorded to the various maintenance factors lies within the circuit court's discretion. *See Meyer v. Meyer*, 2000 WI 132, ¶49, 239 Wis. 2d 731, 620 N.W.2d 382 (Prosser, J., concurring) ("Sound discretion in maintenance determinations must reflect consideration of the factors set out in [the maintenance statute], but the factors in the statute do not appear to be weighted, implying that the weighting will be done by the circuit court."); *Carty v. Carty*, 87 Wis. 2d 759, 768, 275 N.W.2d 888 (1979). Further, we are an error-correcting court. *Blum v. 1st Auto & Cas. Ins. Co.*, 2010 WI 78, ¶50, 326 Wis. 2d 729, 786 N.W.2d 78. "[W]e do not look to 'whether [we] would or would not have [reached the same decision] but rather whether the circuit court [erroneously exercised] its discretion in reaching its decision.'" *Casper v. American Int'l S. Ins. Co.*, 2011 WI 81, ¶30, 336 Wis. 2d 267, 800 N.W.2d 880 (citation omitted).

¶18 In effect, Donald asks us to view the evidence differently than the circuit court viewed it, with an emphasis on the evidence that best supports his position. Our standard of review does not allow us to do so. That the court chose not to make findings of fact and conclusions consistent with Donald's view does not mean it erroneously exercised its discretion.

9

¶19 Based on the evidence presented, the circuit court appropriately considered the facts that Donald has an advanced degree in civil engineering, financed with marital funds, that he "does not use"; that he is "currently employed, albeit below his educational level"; that "[h]is absence from the [job] market … likely means that he will not be employable in that field again"; that the initial decision for Donald to stay home with the children was a joint decision, but "there was testimony that the parties did not agree [on] how long [Donald] stayed at home" and he may have found more work opportunities "[h]ad he returned to work sooner"; that "he is able to meet his financial needs on his current income," save money, and is self-supporting; and that although the children's primary placement with Michelle meant that Donald would be responsible for child support, the court was not awarding child support and considered that as a factor in the maintenance decision. Moreover, and importantly, Donald fails to acknowledge that the circuit court did not outright deny him maintenance: it held maintenance open to be set in the future, if appropriate, after the children reach the age of majority.

¶20 Based on the foregoing, we conclude that the circuit court did not erroneously exercise its discretion by applying the statutory factors to achieve both objectives of maintenance. *See LaRocque*, 139 Wis. 2d at 32-33. The court did not err by reserving maintenance to Donald at this time.

## II. Property Division

¶21 Next, Donald challenges the circuit court's decision regarding property division. A circuit court's decision regarding the division of marital property is also a discretionary decision. *LeMere*, 262 Wis. 2d 426, ¶13. Courts are to follow WIS. STAT. § 767.61 when deciding how to divide marital property.

*McReath v. McReath*, 2011 WI 66, ¶¶23-24, 335 Wis. 2d 643, 800 N.W.2d 399. The statute creates a rebuttable presumption of an equal property division. *Id.*, ¶24. In order to deviate from that presumption, the court must consider all of the statutory factors in § 767.61(3). *See LeMere*, 262 Wis. 2d 426, ¶16. "This is not to say that the circuit court is precluded from giving one statutory factor greater weight than another, or from concluding that some factors may not be applicable at all." *Id.*, ¶25. We also review a circuit court's division of marital property for whether the division was "fair and equitable." *Danielson v. Danielson*, 2024 WI App 57, ¶9, 414 Wis. 2d 1, 13 N.W.3d 239 (citation omitted).

¶22 On appeal, Donald asserts that although "[t]he presumption is that the marital estate should be divided equally," the court divided the estate unequally, and "[t]he explanation the [c]ourt gave for dividing [it] unequally was not in itself reasonable." According to Donald, the court explained the unequal distribution by noting that Michelle's portion comes almost entirely in the form of her retirement accounts, and Donald argues that "[i]t is not reasonable to assert that assets are unequal simply because of the form that they take." Donald also contends that it is "patently unfair" to use the same argument, used to justify no maintenance award, that Donald is being given the mortgage-free marital home "in order to justify an unequal property distribution."[7] Donald further reasons that the circuit court erred because it should have considered that Michelle "makes more

---

[7] Donald contends that the parties built the marital homestead using money that Donald brought into the marriage and borrowed from his family, as well as "sweat equity" because Donald and his family did the bulk of the work in building the house. Any funds that Donald brought into the marriage became marital funds upon building the joint residence, *see* WIS. STAT. § 767.61; *McLaren v. McLaren*, 2003 WI App 125, ¶8, 265 Wis. 2d 529, 665 N.W.2d 405, and, during this period, it was Michelle's sole income that paid the mortgage. Thus, Donald's argument does not serve as a basis to overturn the circuit court's decision.

than three times as much as [Donald] and is therefore more able to pay for a mortgage or rent" and that Donald "provided the money from premarital funds to purchase the land and is also the one who built the land [sic]."[8]

¶23    We conclude that the circuit court properly considered the WIS. STAT. § 767.61 factors and reasonably determined that the presumption of equal property division had been rebutted.  The court divided the marital property and ordered Michelle to make an equalization payment to Donald in the amount of $50,000.[9]  The court acknowledged, however, that its decision, even with the equalization payment, "still results in an unequal property division."  The court explained the disparity by reasoning that "the lion's share of [Michelle's] awarded property comes from her retirement accounts," which presumably meant the funds were not available to Michelle for some time; Donald "kept most of the household furnishings (as he kept the marital home) which was likewise not factored in financially"; Donald was "awarded the marital home and additional real estate that is owned without any mortgage"; and Michelle "must make rental payments or otherwise pay housing costs" and "will likewise be exercising primary placement of the children and will be responsible for their variable expenses."  Thus, the court believed that an unequal distribution was "fair and reasonable under all the circumstances."

---

[8] Again, we note that Donald offers no legal authority in support of his arguments. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) ("Arguments unsupported by references to legal authority will not be considered."); ***Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("[W]e will not abandon our neutrality to develop arguments.").

[9] Michelle argued for an equalization payment of $27,541.90, while Donald believed that an equalization payment of $73,449.50 was required.

¶24    As stated previously, an equal distribution of marital property is merely a starting point. *See McReath*, 335 Wis. 2d 643, ¶24. The circuit court appropriately considered the WIS. STAT. § 767.61(3) factors and supported its discretionary decision to divide the marital estate unequally. Beyond asserting that the court's explanation was "not … reasonable," Donald fails to point to a legal error and fails to convince us that the court did not "reach[] a conclusion that a reasonable judge could reach." *See LeMere*, 262 Wis. 2d 426, ¶13 (citation omitted).

## III.  Child Placement

¶25    Finally, Donald argues that the circuit court erroneously exercised its discretion by ordering primary physical placement of the children with Michelle. Donald had requested a 50/50 week-on-week-off schedule. He asserts that the court's decision to award primary physical placement to Michelle is contrary to the children's best interests, and "[t]here is no reason that he could not share placement of the children." According to Donald, he "was the children's primary caregiv[er] for the great majority of their lives," and Donald's testimony at the trial was "that he did in fact attempt to see the kids [during the parties' separation] and that it appeared to him that [Michelle] would purposefully schedule the children for activities on weekends that he had off." Donald further notes that he resides in the marital home; that "upon doing some redecorating no doubt [the children] would be comfortable" in the home; and that there are no allegations that Donald "has abused the children, has a drinking or drug problem, or is somehow otherwise unfit to share placement of the kids."

¶26    Physical placement of a minor child in a divorce action is governed by WIS. STAT. § 767.41(4). This statute provides that "[i]n determining the

allocation of periods of physical placement, the [circuit] court shall consider each case on the basis of the factors in sub. (5)(am)." Sec. 767.41(4)(a)2. The statute then directs that the court set a placement schedule that "allows the child to have regularly occurring, meaningful periods of physical placement with each parent and that maximizes the amount of time the child may spend with each parent, taking into account geographic separation and accommodations for different households." *Id.*

¶27 However, case law states that this requirement does not create a presumption of equal placement between the parties. *Landwehr v. Landwehr*, 2006 WI 64, ¶¶19-23, 291 Wis. 2d 49, 715 N.W.2d 180. Instead, the circuit court must take into account all of the relevant factors as set forth under WIS. STAT. § 767.41 in making its placement decision. *See Landwehr*, 291 Wis. 2d 49, ¶20. Decisions on child placement are committed to the sound discretion of the circuit court. *Valadez v. Valadez*, 2022 WI App 2, ¶12, 400 Wis. 2d 523, 969 N.W.2d 770 (2021).

¶28 We conclude that the circuit court did not erroneously exercise its discretion by awarding primary physical placement of the children to Michelle. Here too, Donald fails to cite any legal authority in support of his arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). He simply expresses general disagreement with the conclusions the court reached. In its judgment of divorce, the circuit court specifically addressed each of the WIS. STAT. § 767.41(5)(am) factors and explained how those factors impacted its ruling. Based on our review of the record, we conclude that the circuit court appropriately exercised its discretion in this regard.

14

¶29 It was significant to the circuit court's decision that "[i]n the three years since separating[, Donald] has done nothing to facilitate substantial placement time with his children." The evidence presented by Michelle revealed that during the separation period, Donald had a small number of infrequent visits with the children. According to the court, Donald "blames [Michelle] for [the reduced placement time] because the children are busy[,] but the evidence shows that [Michelle] has offered to change their schedule to accommodate a visit with [Donald]." Importantly, the court also found that "[n]either parent seems to have gone out of their way to assist or to prevent relationships with the other parent." These findings were not clearly erroneous.

¶30 Recognizing that the children "expressed a reluctance to spend time overnight with their father," the circuit court ordered that placement with Donald would start without overnights but would increase to overnights every other weekend with additional overnight placement during the summer dependent on Donald's work schedule. The court supported its decision by finding that "[i]t does seem that with some time and effort by [Donald] to create comfortable spaces for the children that they will feel more comfortable spending time at [Donald's] home." Thus, the court gave greater weight to the wishes of the parties' children, who are both at an age where they should have agency to make decisions about their lives. Donald fails to show that the court erroneously exercised its discretion in this regard.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

15