COURT OF APPEALS
DECISION
DATED AND FILED

June 16, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP292**

Cir. Ct. No. 2023FA1112

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

IN RE THE MARRIAGE OF:

HOLLY K. SCHROEDER,

   PETITIONER-RESPONDENT,

 V.

THOMAS P. SCHROEDER,

   RESPONDENT-APPELLANT.

---

APPEAL from a judgment of the circuit court for Brown County: DONALD R. ZUIDMULDER, Judge. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in** WIS. STAT. RULE **809.23(3).**

¶1 PER CURIAM. Thomas Schroeder appeals from the judgment divorcing him from Holly Schroeder. Thomas claims that the circuit court: (1) should have adjourned the divorce hearing and appointed a guardian ad litem (GAL) for him based upon his allegation that he was suffering from mental health issues; (2) erroneously exercised its discretion by failing to explicitly address all of the relevant maintenance factors; and (3) erroneously exercised its discretion by failing to consider all of the parties' assets and debts in the property division. We reject each of these arguments and affirm.

## BACKGROUND

¶2 The circuit court held a contested divorce hearing. Near the beginning of the hearing, after interrupting the court as it administered Holly's oath, Thomas asked the court whether the hearing could be postponed until he obtained an attorney. The court denied the request because Thomas did not have a right to counsel on the issues before the court; Thomas had previously retained counsel who withdrew; and the matter had been scheduled for some time, and Holly had a right to move forward. After explaining to Thomas that he would be able to listen to what everyone had to say, ask questions, and give his side of the story, and further noting that it would not be helpful if Thomas interrupted or was disruptive, the court asked Thomas whether he wanted to participate in the hearing. Thomas responded, "I can't."

¶3 When the circuit court asked Thomas what he meant by that, a woman in the courtroom who identified herself as Thomas's sister interjected that Thomas had recently been released from an inpatient mental institution and that she did not believe that Thomas "has the capacity right now." After the court observed that the woman could not "just come in here and tell me that," Thomas

asked whether he himself could make a request "along those lines." The court asked what Thomas wanted to tell him, and Thomas made an unintelligible statement ending with "fucking nuts,"[1] followed by repeated statements that "I can't do this" and "I can't do it." The court stated that it would take the matter under advisement and would give Thomas an opportunity to provide the court with a letter from a mental healthcare provider to substantiate his apparent claim that he was incompetent to proceed.

¶4 The circuit court then proceeded to take evidence. Holly testified and introduced the following items of evidence: both parties' financial disclosure statements; documentation showing that she had used inherited money to make a down payment on the parties' marital home; photographs showing intentional damage Thomas had done to the home and Holly's personal property (after which Holly obtained a restraining order against Thomas); a property division worksheet; an "Income Breakdown" analysis prepared by Thomas's former attorney that compared the parties' income and housing expenses; two TaxCalc worksheets calculating the amount of maintenance that would be needed to divide the parties' net income after taxes on a 55/45 basis or a 60/40 basis; and a maintenance buyout worksheet.

¶5 Under the 55/45 TaxCalc worksheet, Holly would need to make a monthly maintenance payment of $493 to Thomas in order to provide him with 45% of the parties' combined net income after taxes. Holly's property division worksheet showed a net marital estate worth $199,191. It proposed awarding

---

[1] Although the transcript says that the statement was unintelligible, for the purposes of this opinion, we will accept Thomas's assertion that he told the circuit court that he was "nuts."

$116,724 of the net estate's value to Holly and $82,467 of the net estate's value to Thomas, with an equalization payment of $17,129. The worksheet excluded $29,686 from the value of both the marital estate and the assets proposed to be awarded to Holly, representing the inherited money Holly had used as a down payment for the marital home.

¶6 Thomas testified and asked for monthly maintenance in the amount calculated by his former attorney to equalize the parties' net income after taxes and housing expenses—which the Income Breakdown exhibit showed to be $626. That calculation included income for Thomas from a job at Abby Vans that was not included on Thomas's financial disclosure statement. Thomas asserted, without providing any supporting documentation, that his social security disability payments would be ending soon based upon his employment. He then contradictorily claimed that he did not know whether he was still employed due to a recent hospital stay, but he acknowledged that he did not have any documents stating that he was unfit for employment. Thomas confirmed that the information on his financial disclosure statement and the Income Breakdown exhibit was accurate when those documents were prepared.

¶7 Thomas did not explain the purpose of his hospitalization or provide any other testimony regarding his health, disability, or mental health issues. He did not testify about his education level or vocational training, and he did not provide any other evidence regarding his earning capacity, aside from his actual current income and unsubstantiated claims that he might be losing some of his income in the future. Thomas did not testify about the assets or debts listed on his own financial disclosure statement or dispute the accuracy of any of Holly's submitted documents. He asked to be awarded the house, but he did not submit

his own property division worksheet or calculate any proposed property equalization payment.

¶8    After the close of the evidence, the circuit court observed, based upon Thomas's responses during the hearing: "I'm not impressed by the respondent's claims that he is—doesn't know what's happening. It seems to me he is—basically does not want this proceeding to go forward and is being obstreperous." Thomas did not provide the court with any medical opinion supporting his claim of incompetence during the period following the hearing when the court held the matter under advisement to permit Thomas to do so. The court therefore declined to appoint a GAL on Thomas's behalf and proceeded to make a decision based upon the evidence presented at the hearing.

¶9    The circuit court found that the allegations in the petition were proven. They included that that Holly had been born in 1966 (which made her 57 years old at the time of the divorce[2]); that Thomas had been born in 1967 (which made him 56 years old at the time of the divorce); that the parties had been married in 1991 (meaning the marriage lasted over 33 years); and that the parties had no minor children together.

¶10    The circuit court found that Holly was employed at Bellin Heath, with a monthly gross income of $8,515, as stated in her financial disclosure statement. The court found that Thomas was employed at Abby Vans and that his income also was as set forth on his financial disclosure statement. However, Thomas's financial disclosure statement did not include any income from Abby

---

[2] The circuit court granted the divorce to be effective as of the date of the hearing, which was November 4, 2024.

Vans. The only evidence provided about Thomas's income from Abby Vans was his own testimony and the Income Breakdown exhibit prepared by his former attorney, which showed that Thomas had a monthly gross income of $5,252 from his combined wages and social security disability payments. We therefore construe the court's finding about Thomas's income to incorporate by reference Thomas's financial disclosure statement, *as updated by the evidence produced at trial*, including the Income Breakdown exhibit.

¶11 Based upon "the length of the marriage and differentials in income," the circuit court awarded Thomas $500 per month in indefinite maintenance; however, it further ordered that such maintenance be funded for only 60 months. After that time, Thomas could petition for a review of maintenance, which would be determined based upon the parties' then-existing financial circumstances.

¶12 The circuit court accepted Holly's property division worksheet, but the court adjusted it to include Holly's down payment for the house. With that adjustment, the net marital estate was implicitly found to be worth $228,877. Holly was awarded assets and liabilities accounting for $146,410 of the net estate's value, and Thomas was awarded assets accounting for $82,467 of the net estate's value. The court decided that it would be equitable to deviate from an equal property division in order to compensate Holly for the inherited property she had contributed to the marital home and for the intentional damage Thomas had done to the home and Holly's personal property. It pronounced in its oral decision that it would therefore divide the marital estate on a 55/45 basis and provide Holly with a $5,000 credit on her equalization payment. In its written decision, the court

ordered Holly to make an equalization payment to Thomas of $23,443, "consistent with"[3] its decision to divide the estate unequally.

¶13    Thomas now appeals the divorce judgment, challenging the circuit court's refusal to appoint a GAL and both the maintenance and property division awards.

## DISCUSSION

### I.  Appointment of a GAL

¶14    As a threshold procedural matter, Thomas contends that the circuit court was required, as a matter of law, to adjourn the divorce hearing and appoint a GAL on his behalf.  The statutory provisions relevant to this claim are found in WIS. STAT. § 803.01(3) (2023-24).[4]

¶15    WISCONSIN STAT. § 803.01(3)(a) provides that a person who has been "alleged to be incompetent" shall appear in a civil case by an attorney, a guardian of the estate who may appear by an attorney, or by a GAL who may appear by an attorney.  Section 803.01(3)(b)4. and 5., together, provide that a circuit court shall appoint a GAL upon the filing of a captioned motion that states "facts showing the need and authority for the appointment." Section 803.01(3)(c)1. provides that the court shall not hold further proceedings without appointing a GAL if the court finds that "a person believed by the court to

---

[3] Awarding Thomas $82,467 worth of assets, plus an equalization payment of $23,443, actually resulted in Thomas having over 46% of the net marital estate's value, without giving Holly a $5,000 credit.  However, given that Holly has not cross-appealed, we do not address this discrepancy in Thomas's favor between the circuit court's oral and written decisions.

[4] All references to the Wisconsin Statutes are to the 2023-24 version.

be mentally incompetent to have charge of his or her affairs" has been unrepresented.

¶16    None of these provisions were triggered here, however. The first two provisions requiring the appointment of a GAL upon an allegation of incompetence do not apply because Thomas never filed a captioned motion alleging that he was incompetent and requesting the appointment of a GAL, much less demonstrating his need for a GAL. Neither Thomas's own statement in court that he was "nuts" nor his sister's unsworn statement that he had been recently confined in a mental institution satisfy the requirement for a captioned motion.

¶17    The third provision requiring further proceedings to be stayed was not triggered because the circuit court did not subjectively believe Thomas to be incompetent to have charge of his affairs based upon the court's own observations of him during the proceeding. Thomas's argument that the court had "reason to believe" Thomas was not competent based upon his various statements and behavior during the hearing is misplaced because, unlike WIS. STAT. § 971.14(1r)(a) (addressing incompetency in criminal proceedings), WIS. STAT. § 803.01(3)(c)1. does not set forth an objective "reason to believe" test.

¶18    In sum, the circuit court was not required to appoint a GAL for Thomas because Thomas never requested one in writing, he never provided any medical opinion documenting incompetency, and the court was not persuaded based on its own observations that Thomas was incompetent to handle his affairs.

## II. Maintenance

¶19    Maintenance and property division determinations lie within the discretion of the circuit court. *Weiler v. Boerner*, 2005 WI App 64, ¶11,

280 Wis. 2d 519, 695 N.W.2d 833. We will uphold such discretionary decisions so long as the court reached a rational decision based upon the application of the correct legal standards to the facts of the case. *Id.*

¶20 WISCONSIN STAT. § 767.56(1c) lists a number of factors for a circuit court to consider when determining the amount and duration of a maintenance award, including the length of the marriage, the age and health of the parties, the property division, the parties' respective educational levels and earning capacities, the contributions of one party to the education or earning power of the other, tax consequences, and the standard of living enjoyed during the marriage. These factors are designed to further two distinct but related objectives in the award of maintenance: to support the recipient spouse in accordance with the needs and earning capacities of the parties (the support objective) and to ensure a fair and equitable financial arrangement between the parties (the fairness objective). *LaRocque v. LaRocque*, 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987). The court need only address those factors that are relevant based upon the evidence presented by the parties, however. *Trattles v. Trattles*, 126 Wis. 2d 219, 228-29, 376 N.W.2d 379 (Ct. App. 1985).

¶21 Here, Thomas faults the circuit court for failing to explicitly discuss the age of the parties; their respective physical and emotional health; their respective educational levels; and their respective earning capacities. However, the petition stated the parties' ages, and the court specifically found the facts in the petition were proven. Thomas did not testify about any of the other factors, aside from his unsubstantiated and speculative testimony that he might lose either his

employment or his social security disability payments.[5] The court was not required to deem that testimony credible. It therefore had no basis to consider those factors relevant and no obligation to discuss them.[6]

¶22 Thomas also faults the circuit court for failing to address the parties' living expenses and respective abilities to become self-supporting. However, the only evidence presented on those factors were the figures provided in the financial disclosure statements and the Income Breakdown exhibit, which the court apparently relied upon in reaching its decision and which showed that each party had sufficient income to meet their claimed living expenses. Given the limited information before it, the court could properly rely upon the parties' actual income disparity as the most relevant factor for determining the amount of maintenance. The amount of maintenance that the court ultimately chose was between the amounts suggested by the parties, and it reasonably was closer to the amount suggested by Holly, who had provided better documentation to support her request.

¶23 As to the duration of the maintenance, the circuit court adequately explained that it had taken the length of the marriage into account. We see nothing unreasonable either in awarding an indefinite term of maintenance following a long-term marriage or in directing that the amount of maintenance

---

[5] In his brief, Thomas cites some information that his former attorney provided in letters to the circuit court, but those letters were not introduced at the divorce hearing and are therefore outside of the evidentiary record.

[6] In the event that Thomas does lose either his employment or social security disability payments, he is free to file a motion seeking modification of his maintenance based upon a substantial change in circumstances.

could be reviewed after 60 months, at which point the parties would be approaching retirement age.

### III. Property Division

¶24    Thomas next argues that the circuit court erroneously exercised its discretion with respect to the property division because in calculating the marital estate, it did not include debts from three State Department Federal Credit Union accounts, which totaled $40,000, and several other credit card accounts with lesser balances. Thomas's financial disclosure statement listed all of those accounts as being paid by Holly without specifying that they were titled in his name.

¶25    Holly argues that she did not know the outstanding balances on these accounts because she had no access to that information. In any event, Thomas did not testify about any of those accounts at the divorce hearing, did not produce any statements documenting the balances on the accounts, and did not provide the circuit court with any alternate calculation of the marital estate that included the debts from those accounts. Further, the court denied Holly's request to exclude $29,686 from the final division of property related to her uncontroverted use of traceable individual monies to make a down payment on the marital residence in 2022. Under those circumstances, the court reasonably ordered that Holly was responsible to pay the mortgage on the parties' residence, which she received in the property division, the car loan on Holly's vehicle, and the three credit card accounts in Holly's name, with the responsibility for the remaining debt assigned to the party who presumably incurred it.

¶26    Thomas further contends that the circuit court erroneously exercised its discretion by failing to include in the marital estate two of the four of Holly's IRA accounts, totaling $27,000, that were listed on Holly's financial disclosure

11

statement. However, Holly testified that only two retirement accounts included in her property division worksheet could be considered "marital," and, once again, Thomas provided no testimony or evidence to the contrary.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.